Ingolf H. E. OTTO, Appellant,

v.

The KANSAS CITY STAR COMPANY, a Corporation, Respondent.

No. 49478.

Supreme Court of Missouri,

Division No. 1.

June 4, 1963.

Elwyn L. Cady, Jr., Kansas City, for appellant.

Douglas Stripp, Clayton R. Smalley, Kansas City, for respondent, Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

HOUSER, Commissioner.

The circuit court dismissed plaintiff's petition for libel against The Kansas City Star Company on the ground that it failed to state a claim upon which relief may be granted. Plaintiff has appealed.

Plaintiff's notice of appeal was filed two days before the expiration of the ninety day period provided for in Sup.Ct. Rule 82.05, V.A.M.R. Defendant has filed a motion to dismiss the appeal on the ground that it is premature, citing Tucker v. Miller, 363 Mo. 820, 253 S.W.2d 821. After that case was decided Sup.Ct. Rule 82.05 was amended by adding paragraph (b), which provides that "In any case in which a notice of appeal has been filed prematurely, such notice shall be considered as filed immediately after the time the judgment becomes final for the purpose of appeal." The amendment controls this case and the motion is overruled.

Defendant has filed a motion to dismiss the appeal for insufficiency of plaintiff's jurisdictional statement. Plaintiff omitted the factual data required by Sup.Ct. Rule 83.05, contenting himself with a bare recital that jurisdiction is vested in this court "for the reason that the amount in dispute exceeds $15,000, to wit, $400,000," but it is obvious that we have jurisdiction and we are not willing in this case to dismiss the appeal on account of this omission. Tarantola v. Johnny Hemphill, Inc., Mo.App., 324 S.W. 2d 379.

The first point on appeal raises the question whether the petition, now here reproduced in full, states a claim upon which relief may be granted:

"Plaintiff for his cause of action states as follows:

"1. That defendant is a duly organized corporation, the Owner and Publisher of a newspaper, THE KANSAS CITY STAR.

"2. That in said newspaper, on January 6, 1960, said defendant published an article about plaintiff in which he was defamed.

"3. In particular, the following portions of the article are libelous:

" 'CHIDED FOR SONS' TRIP       (headline)

-- -- -- -- --

" 'MAN IS REPRIMANDED BY JUDGE

-- -- -- -- --

" 'I. H. E. OTTO, a Divorce Case Principal, Took Boys to England Without Permission.
   * * * In November, Judge Stubbs denied a divorce to Mrs. Carlyle M. Otto, 7317 Wyoming Street, but left the children in her custody.'
           (body of article,
           paragraph 2)

"4. As a result of the publication of said false and malicious statements, plaintiff has been held up to the community as worthy of hatred and contempt, and he has been humiliated and harmed in his personal and business life in the community.

"WHEREFORE, plaintiff prays for judgment against defendant in the amount of One Hundred Thousand Dollars ($100,-000) compensatory damages, and Three Hundred Thousand Dollars ($300,000) exemplary damages, and costs."

■ Plaintiff contends that the petition sets forth "a good cause of action for libel," by which we take it that he contends that the published words constitute libel per se, since he pleads no innuendo, no inducement, and no special damages. Langworthy v. Pulitzer Publishing Co., Mo.Sup., 368 S.W. 2d 385.

Plaintiff argues that the tenor of the portions of the article quoted in the petition is that "plaintiff is a bad man" ; that it implies that plaintiff's action (taking the boys to England without permission) was "opprobrious" ; that the statement that the judge left the children in the wife's custody shows that plaintiff "had violated a judicial pronouncement" ; that the natural tendency of this language is to bring plaintiff into dishonor, render him infamous, harm his reputation, lower him in the estimation of the community, reflect on his integrity, character, good name and standing in the community, and expose him to public hatred, contempt, or disgrace.[1]

■ Plaintiff did not set forth the entire article in the petition. In determining the reasonable meaning of the words actually alleged to be libelous the court must construe the article as a whole, Coots v. Payton, 365 Mo. 180, 280 S.W.2d 47, 52; Hylsky v. Globe Democrat Pub. Co., 348 Mo. 83, 88 [1], 152 S.W.2d 119, 121 [1, 2], "[s]ince one part of a publication may explain another part, and since the intent and

the meaning must be gathered not only from the words singled out as libelous but from the context, * * * all parts of the publication must be read together to collect the true meaning." Diener v. Star-Chronicle Pub. Co., 230 Mo. 613, 132 S.W. 1143, 33 L.R.A.,N.S., 216, quoted with approval in Lorenz v. Towntalk Pub. Co., Mo.Sup., 261 S.W.2d 952, 954.

Here is the entire article, which was introduced in evidence at the pre-trial hearing:

"CHIDED FOR SONS' TRIP

"MAN IS REPRIMANDED BY JUDGE

"I. H. E. Otto, a Divorce Case Principal, Took Boys to England Without Permission

"Ingolf H. E. Otto, who is opposing a divorce suit filed by his wife in 1957, yesterday was reprimanded by Judge Tom J. Stubbs of the Jackson County Circuit Court for taking his two sons to England without permission of the court.

"In November, Judge Stubbs denied a divorce to Mrs. Carlyle M. Otto, 7317 Wyoming Street, but left the children in her custody. The court yesterday granted a new hearing at 1:30 o'clock Friday on the divorce.

" 'I've concluded that I will not take any punitive action,' Judge Stubbs told Otto, an insurance executive, 'although it was a foolish thing for you to do.'

"Otto, who said that he intends to return to England after the hearing, denied that he was attempting to take the children out of the jurisdiction of the court.

"Pointing out that the children had been returned and that he himself had returned for the hearing, Otto said that after the ruling of the court he thought he was permitted to take the children out of the country.

"Otto said that he had telephoned his sons, George V. E. Otto, 13, and Richard A. F. Otto, 12, and they had agreed to go

1. No issue is raised on this appeal with respect to the defense of privilege, which was pleaded in the answer. Accordingly, we express no opinion on that subject, and confine ourselves to the two issues actually raised.

with him. He said that he sent them plane fare.

"The Ottos were married April 3, 1943, in Cincinnati, and separated September 1, 1957."

Section 559.410, RSMo 1959, V.A.M.S., provides: "A libel is the malicious defamation of a person made public by any printing, * * * tending to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse, * * *."

■ The published writing must itself amount to a *defamation* in a libelous sense. "Defamation includes the idea of calumny, aspersion by lying; the injury of another's reputation in that way. To defame is to speak evil of one maliciously, to dishonor, to render infamous." Diener v. Star-Chronicle Pub. Co., 232 Mo. 416, 135 S.W. 6, 11; Coots v. Payton, supra.

■ In our judgment the published words quoted are not libelous per se and may not be so considered upon any reasonable construction of them. They are not defamatory on their face. They cannot be reasonably understood in any defamatory sense, or to say what plaintiff reads into them. They do not say that plaintiff violated a court order prohibiting him from taking the boys to England, or that he knowingly disregarded a court judgment, or that he is a wrongdoer, or that what he did was disgraceful. Interpreting the article from its four corners, Williams v. Kansas City Transit, Inc., Mo.Sup., 339 S.W.2d 792, and giving to the article its ordinary meaning in the plain and popular sense, Jacobs v. Transcontinental & Western Air, Inc., 358 Mo. 674, 216 S.W.2d 523, it would clearly appear to any person of ordinary understanding that plaintiff thought he was permitted to take the children out of the country; that the boys had agreed to go with him; that plaintiff was disposed to conform to the court's requirements, as indicated by the recited fact that he had returned both himself and the children from

England for the hearing, and that the chiding or reprimand was based upon the judge's view that plaintiff did a "foolish" thing. These additional elements, omitted from the petition, completely negative any idea of forcible abduction, or intentional flouting of the court's order, and indicate only that what plaintiff did was foolish, rather than bad, opprobrious or illegal. If it be argued that to be called foolish by a judge in open court subjects one to ridicule, a complete answer is that "words do not constitute a 'defamation' solely because they subject one to ridicule." Coots v. Payton, supra, 280 S.W.2d at p. 54 quoted in Langworthy, supra, at p. 497.

■ Does the petition come within the rule that a petition based on published words not defamatory per se may state a claim upon which relief may be granted for libel per quod? No, because the petition "must allege extrinsic facts which show that although the words published were not libel per se they were in fact defamatory, and * * * in such situation special damages must be pleaded" in order to state a claim upon which relief may be granted for libel per quod. Langworthy v. The Pulitzer Publishing Co., supra, 368 S.W.2d, l. c. 385. Plaintiff, as indicated, alleged no innuendo, inducement, or special damages, and therefore did not state a case of libel per quod.

The petition not having stated a claim upon which relief may be granted, either per se or per quod, the court did not err in dismissing plaintiff's petition.

The second question is whether the court should have granted plaintiff's oral request, made at the time of the ruling, or his subsequently filed written motion, for leave to amend the original petition.

■■ Where the original petition states no claim whatever upon which relief may be granted, it does not toll the running of the statute of limitations, and an amendment made after the bar of the statute will not relate back, but will be considered as the beginning of a new action, in reckoning the statutory period of limitations.

Reed v. Jackson, 346 Mo. 720, 142 S.W.2d 862, 865; 54 C.J.S. Limitations of Actions § 279 b., p. 321. The statute of limitations requires actions for libel to be commenced within two years. § 516.140, RSMo 1959, V.A.M.S. The original petition, filed January 7, 1960, did not state a cause of action for libel per se, and for lack of allegations of innuendo, inducement and special damages, did not state a cause of action for libel per quod. More than two years later, on January 16, 1962, plaintiff moved for leave to file an amended petition. Under the circumstances such an amendment would not relate back to January 7, 1960; on January 16, 1962 the statute had run, and any new claim filed would have been barred. There was no error in refusing to permit the amendment.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.