■ JOSEPH W. DALLY, Respondent, v ORANGE COUNTY PUBLICATIONS, a Division of OTTOWAY NEWSPAPERS, INC., Doing Business as the TIMES HERALD RECORD, Appellant.—In a defamation action, defendant appeals from an order of the Supreme Court, Orange County (Isseks, J.), dated January 4, 1985, which denied its motion for summary judgment dismissing the complaint.

Order reversed, on the law, with costs, motion granted, and complaint dismissed.

Plaintiff, a Deputy Sheriff, commenced this defamation action against defendant for having published on November 21, 1982, an advertisement under the "Personals" column of its Classified Market Guide, which lists plaintiff's first name and telephone number as the person to contact for further information regarding the meetings of a Monroe chapter of the "Gay Community Center". Approximately a year and a half prior to the subject advertisement, the defendant had published a similar advertisement and was promptly notified by plaintiff that it was false and unauthorized by him. Defendant publisher apologized to plaintiff for any embarrassment caused by the advertisement appearing in the April 4, 1981, edition and instituted a "call-back" procedure for eliminating "hoax" advertisements. Pursuant to this procedure, when an advertisement of a sensitive nature was telephoned into the office for placement in the Classified Market Guide, the employee taking it was instructed to call the listed telephone number to confirm that the person named in the advertisement had authorized its publication.

On November 21, 1982, over 2,000 advertisements were printed in the Classified Market Guide. According to the classified advertising manager Daniel Pauley, 16 employees

work in his department and each receive approximately 100 telephone calls a day from persons inquiring about or placing advertisements. When an individual calls the department to place an advertisement, an employee will enter the appropriate information into a computer terminal. Such employees have been instructed to utilize the call-back procedure for all advertisements to be placed in the "Personals" column of the market guide. The computer program then directs the proper printing and placement of the advertisement in the paper. Although Pauley was the manager on both dates when a defamatory advertisement was published about plaintiff, there is no proof in the record that Pauley saw the November 21, 1982, advertisement prior to publication, or, assuming he saw it, had recalled, after the lapse of a year and a half, the April 4, 1981, advertisement.

If the plaintiff in a defamation action against a newspaper is a public official and the defamation relates to his official conduct, the plaintiff must establish actual malice, i.e., that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard of the truth, before he may recover damages *(see, New York Times Co. v Sullivan,* 376 US 254; *Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, *cert denied* 434 US 969; *see also, Libel and Slander: Who is a Public Official or Otherwise Within the Federal Constitutional Rule Requiring Public Officials to Show Actual Malice,* Ann., 19 ALR3d 136). The public official category has been expanded to include lower echelon officials, such as a Deputy Sheriff *(see, St. Amant v Thompson,* 390 US 727; *see also, Orr v Lynch,* 60 AD2d 949, *affd* 45 NY2d 903 [policeman]; *Malerba v Newsday, Inc.,* 64 AD2d 623 [patrolman]). Furthermore, a charge of immoral conduct, analogous to a charge of illegal conduct, no matter how remote in time or place, is never irrelevant to an official's fitness for office *(cf. Monitor Patriot Co. v Roy,* 401 US 265, *on remand* 290 A2d 207; *Ocala Star-Banner Co. v Damron,* 401 US 295). The advertisement at issue imputes homosexual behavior to the plaintiff. If false, it constitutes libel per se *(see, Matherson v Marchello,* 100 AD2d 233; *Privitera v Town of Phelps,* 79 AD2d 1, 3; *cf. Nowark v Maguire,* 22 AD2d 901). "Rightly or wrongly, many individuals still view homosexuality as immoral" *(see, Matherson v Marchello, supra,* p 241). Consequently, we conclude that the advertisement comes within the scope of the rule in *New York Times Co. v Sullivan (supra).*

Based on the aforenoted circumstances, Special Term erred in denying defendant's motion for summary judgment, made

after discovery was complete, because plaintiff has not met his burden of submitting evidence " 'which shows a genuine issue of material fact from which a reasonable jury *could find* actual malice with convincing clarity' " *(Di Lorenzo v New York News,* 81 AD2d 844, 845, quoting from *Nader v de Toledano,* 408 A2d 31, 49 [DC], *cert denied* 444 US 1078). Plaintiff's evidence, giving it the most favorable inference, is that the employee responsible for printing the advertisement on November 21, 1982 had relied on an unreliable source and that if said employee had utilized the call-back procedure, he or she would have ascertained that the advertisement was false and unauthorized. Said facts do not suffice to present a triable issue that the newspaper employee responsible for publishing the advertisement acted with "reckless disregard of the truth", or, in other words, with a high degree of awareness that the advertisement was false *(see, Pauling v National Review,* 49 Misc 2d 975, 982, *affd* 27 AD2d 903, *affd* 22 NY2d 818; *cf. Di Lorenzo v New York News, supra).* Mollen, P. J., Thompson, Rubin and Kunzeman, JJ., concur.