Janet NAZERI, Appellant,

v.

**MISSOURI VALLEY COLLEGE** and
Dennis Spellmann, Respondents.

No. 75201.

Supreme Court of Missouri,
En Banc.

Aug. 17, 1993.

Rehearing Denied Sept. 28, 1993.

Michael W. Manners, Kevin Blackwell, Independence, for appellant.

Robert B. Hoemeke, Mary B. Schultz, Cordell P. Schulten, St. Louis, Robert J. Guinness, William Randolph Weber, St. Charles, for respondents.

PRICE, Judge.

Appellant Janet Nazeri appeals the dismissal of her third amended petition for damages for failure to state a claim upon which relief can be granted. We reverse the dismissal of Counts I and II, alleging slander *per quod* and slander *per se,* and remand. We affirm the dismissals of Count III, prima facie tort; Count IV, intentional infliction of emotional distress; Count V, intentional interference with a business relationship; and Count VI, invasion of privacy (false light).

*I*

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. *Sullivan v. Carlisle,* 851 S.W.2d 510, 512 (Mo. banc 1993). No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

With this in mind, we turn to appellant's petition. In general, it alleges that appellant was employed as Director of Teacher Education in the Missouri Department of Elementary and Secondary Education. Her duties included chairing the Department's teacher evaluation teams and visiting college campuses to conduct such evaluations. The respondents are the Missouri Valley College, a private religious college located in Marshall, Missouri, and Dennis Spellmann, who was Vice–President of the college at the time the acts complained of took place.

In October 1989, Spellman (hereafter "respondent") spoke to a reporter for the Marshall Democrat–News about appellant's adverse evaluation of the college's teacher education program. Respondent stated that he was speaking on behalf of the college as its Vice–President. He described appellant as incompetent, out to get the college, prejudiced against the college, and opposed to church schools having education programs. He also asserted that "Janet Nazeri lives with S__ A__, who is a well known homosexual and has lived with her for years", and that "You know Ms. Nazeri left her husband and children to live with S__ A__."

Some time later respondent met with the same reporter and a second reporter for the Marshall Democrat–News. At this meeting, respondent stated that appellant was incompetent, "out to get" Missouri Valley College and "out to close private colleges," and that he "would not tolerate fags on campus." He also accused appellant of being involved in a conspiracy with S__ A__ to use her professional position to effect a bad educational program evaluation of the college, in furtherance of these purported objectives. Although none of these statements was published by the newspaper, appellant asserts that they have become "public knowledge."

Respondent then met with the Administrative Assistant to the Commissioner of Education and informed him that he did not want appellant to head an evaluation team. In August 1990, respondent told faculty members at Lindenwood College that he had "taken care of" appellant and that she would no longer be on campus.

Appellant avers that these statements have injured her personal and professional reputation and have adversely affected her employment. After these events transpired, appellant was relieved of certain responsibilities as chair of the evaluation teams. She was prevented from completing the evaluation of Missouri Valley College and from performing the preliminary work for an evaluation of Lindenwood College. She stopped receiving requests for teacher education and testing from Drury College. In December 1989, another official was assigned to deliver a presentation to the Board of Education in her place.

Appellant further avers that because of respondent's actions she has suffered public ridicule and loss of reputation, respect, professional standing, and business contacts. Professional peers have asked her about the truth of the comments. Fellow employees have informed her that she is too controversial to associate with. Communications she would normally receive have been routed around her. This situation has caused appellant emotional distress and sleep and appetite disturbances, for which she has had to seek medical treatment.

## II

### A.

An analysis of plaintiff's slander claims and defendants' objections thereto reveals the complexity in actions of this sort. Some are inherent in all defamation actions. Others, however, focus on the peculiar distinctions between the theories of slander *per se* and slander *per quod.*

Appellant's slander claim in both counts is grounded upon the remarks made by respondent to the newspaper reporters. Appellant asserts that all of these statements were and are false, that they were made concerning her, and that they were made willfully and maliciously, in an effort to discredit and destroy her personal and professional reputation. She further avers that the statements were made with knowledge that they were false, or with reckless disregard for their truth or falsity. Count II pleads slander *per se,* based upon the allegation that respondent's remarks impute unchastity, adultery, homosexuality, and criminal conduct. Count I pleads slander *per quod,* further alleging injury to appellant's reputation, employment, professional standing, and emotional harm.

Respondents counter with a barrage of objections. They argue that appellant did not plead the objectionable language with specificity; that there is no nexus with the damages claimed by appellant because the newspaper did not report the comments; that the comments are privileged, both as expressions of opinion and as commentary

upon the motives of a public official; that appellant did not plead special damages; that the statements pleaded are not defamatory on their face and are not accompanied by any innuendo that would render them defamatory; and that any references to homosexuality do not allude to appellant and do not impute unchastity or the crime of deviate sexual intercourse.

### B.

At common law, slander *per se* encompassed false statements that the plaintiff was guilty of a crime, afflicted with a loathsome disease, or unchaste, as well as false statements that concerned the plaintiff's ability to engage in his or her occupation or business. In such cases the plaintiff was not required to plead damages, as damages were presumed from the nature of the defamation. Where the words were not actionable as slander *per se*, the tort was referred to as slander *per quod* and the plaintiff was required to plead and prove, in addition, "special damages." Special damages in this sense meant a loss of money or of some advantage capable of being assessed in monetary value, such as the loss of a marriage, employment, income, profits, or even gratuitous hospitality. *Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506, 509 (Mo. banc 1986).

These classifications do not correspond exactly to those found in libel law. There, *per se* referred to a statement whose defamatory nature was apparent upon the face of the publication, whereas *per quod* indicated a statement that required resort to extrinsic facts in order to become defamatory. *Carter,* 714 S.W.2d at 509 n. 1. Libel *per se* was actionable without proof of damages. Libel *per quod,* by analogy to slander *per quod,* required proof of special damages. *Capobianco v. Pulitzer Publishing Co.,* 812 S.W.2d 852, 855 (Mo.App.1991). Adding to the confusion was the fact that many courts permitted libel *per quod* to be actionable without proof of special damages if it imputed a matter that would constitute slander *per se* if the statement had been spoken. *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 483 A.2d 456, 471 (1984).

The distinction between *per se* and *per quod* causes of action derived from the ancient conflict of jurisdiction between the royal and ecclesiastical courts of England. Initially, slander was the province of the ecclesiastical courts. The royal courts had jurisdiction only over those claims that could be shown to have resulted in "temporal," as opposed to "spiritual," injury. This is the origin of the requirement to prove "special damages" in the form of an actual out-of-pocket loss in all cases where such damages cannot be conclusively presumed. *Carter,* 714 S.W.2d at 509; *Agriss,* 483 A.2d at 469–70. With the demise of the ecclesiastical courts, the rationale for this distinction evaporated—and so did the venue for defamation claims that did not result in direct economic losses. Nonetheless, by this time the presumed damages/special damages duality was entrenched in the very definition of the tort. As a result, even though libel and slander have evolved to the point where modern law combines them as the generic tort of defamation, the causes of action themselves have retained both the *per se/per quod* designation and many of the characteristics of the old common law torts.

The consequences of this anachronism were of more than academic interest. The presumed damages/special damages distinction controlled the right of plaintiffs to bring a defamation claim, even though it bore little relationship to either the magnitude of a plaintiff's injury or the wrongfulness of a defendant's conduct. It also exposed some defendants to liability that might be far in excess of the actual injury caused. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974).

The situation was made more egregious by the nature of the injury usually inflicted by a defamation. As noted by the United States Supreme Court in *Gertz,* "the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* at 350, 94 S.Ct. at 3012. Consequently, the particular type of harm demanded by courts in *per quod* cases was often impossible to document.

The law of defamation, however, has been the subject of substantial re-examination and reformation during the past thirty years. The primary cause of this re-examination was a series of United States Supreme Court decisions attempting to reconcile federal constitutional principles of freedom of speech with state-developed defamation law.

In *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Court held that the First Amendment precluded a public official's recovery of defamatory damages unless proof was made of "actual malice"[1] regarding the false statements. In *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974), the Court focused on the nature of recovery allowed to a private defamation plaintiff. There the Court noted:

> The common law of defamation is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss. Under the traditional rules pertaining to actions for libel, the existence of injury is presumed from the fact of publication. Juries may award substantial sums as compensation for supposed damage to reputation without any proof that such harm actually occurred. The largely uncontrolled discretion of juries to award damages where there is no loss unnecessarily compounds the potential of any system of liability for defamatory falsehood to inhibit the vigorous exercise of First Amendment freedoms. Additionally, the doctrine of presumed damages invites juries to punish unpopular opinion rather than to compensate individuals for injury sustained by the publication of a false fact. More to the point, the States have no substantial interest in securing for plaintiffs such as this petitioner gratuitous awards of money damages far in excess of any actual injury.

*Gertz* went on to hold that a "private defamation plaintiff" is constitutionally precluded from recovery of presumed or punitive dam-

ages absent a showing of malice. Absent malice, a private plaintiff is limited to recovery of damages for "actual injury" as to which the Court stated:

> We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

*Id.* at 349, 94 S.Ct. at 3012.

The Supreme Court in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,* 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1984), again addressed this issue. Justice Powell issued a plurality opinion restricting the *Gertz* decision to matters of public concern and holding that as to private individuals and private matters the constitutional value of speech is reduced and "the states' interest adequately supports awards of presumed and punitive damages even absent a showing of "actual malice." 472 U.S. at 761, 105 S.Ct. at 2946.[2]

Prior to the decision in *Dun & Bradstreet, Inc.,* many courts believed that *Gertz* had eliminated the distinction between defamation *per se* and *per quod.* For example, in *Memphis Publishing Co. v. Nichols,* 569 S.W.2d 412 (Tenn.1978), the Tennessee Supreme Court stated:

> Since *Gertz* has held that presumed damages are no longer permissible, the *per se/per quod* distinction no longer has any practical meaning. "A uniform requirement for proof of actual damages obliterates these often illogical distinctions, most of them relics from centuries past." Eaton, *The American Law of Defamation Through Gertz v. Robert Welch and Beyond,* 61 Va.L.Rev. 1349, 1434 (1975). We hold, therefore, that the *per se/per quod* distinction is no longer a viable one. The

---

1. "Actual malice" was defined as a statement known to be false or made with reckless disregard of whether it was false or not. 376 U.S. at 280, 84 S.Ct. at 726.

2. Justice Powell distinguished Gertz by noting that it was a case involving an expression by a media defendant as to a matter of "public concern" even though the plaintiff was not a public official. 472 U.S. at 756, 105 S.Ct. at 2944.

plaintiff must plead and prove injury from the alleged defamatory words, whether their defamatory meaning be obvious or not.

569 S.W.2d at 419. *See also Metromedia, Inc. v. Hillman,* 285 Md. 161, 400 A.2d 1117 (Md.1979); *Gobin v. Globe Publishing Co.,* 232 Kan. 1, 649 P.2d 1239 (1982); *Lent v. Huntoon,* 143 Vt. 539, 470 A.2d 1162 (1983); *Agriss v. Broadway Exp., Inc.,* 334 Pa.Super. 295, 483 A.2d 456 (1984).

Similarly, Missouri revised its MAI instructions for libel and slander in 1980. Prior to that time, MAI 23.09 was the verdict director for "Slander Not Per Se" and 23.10 was the verdict director for "Slander Per Se". The new instructions did not retain the *per se/per quod* distinction. Instead, 23.10(1) was titled "Verdict Directing—Slander—Plaintiff not a Public Official or Public Figure" and 23.10(2) "Verdict Directing—Slander—Plaintiff A Public Official or Public Figure." While no committee comment explicitly states the reason for or desired result of this change, it is nonetheless apparent that this was an attempt to comply with the newly imposed constitutional limitation on defamation claims and perhaps an attempt to simplify an area of law otherwise unduly complicated by anachronisms of the past. The instructions result in shifting the historic slander *per se/per quod* duality to a duality that distinguishes between comments regarding public matters that are constitutionally protected and comments regarding private matters.

Thus, it is necessary for us to re-examine whether we retain the MAI approach to slander which has abandoned the *per se/per quod* distinctions or, as allowed by *Dun & Bradstreet, Inc.,* return to the former technicalities of defamation law.[3] An examination of plaintiff's claims is helpful in this regard.

### C.

### (i)

Counts I and II rest upon the same alleged defamatory remarks. Paragraph 41 of Count II maintains that the statements portray plaintiff:

... as an unchaste woman, a woman engaged in illegal and immoral acts, and a person who abandoned her home, spouse and family, as well as portraying plaintiff as one engaged in adulterous and criminal conduct. All such statements being slander *per se.*

The various additional paragraphs of Count I appear to plead that the same statements constitute slander *per quod* and have damaged plaintiff in her career, thus constituting "special damages". Because appellant may only recover once for her alleged injuries, it is assumed that the *per quod* claim in Count I is really an alternative pleading in the event that plaintiff cannot recover on her Count II *per se* claim.

Respondents contend that appellant has pleaded neither defamation *per se* nor *per quod.* It is their contention that because words must be construed in their most innocent sense that the statements alleged do not constitute slander *per se* and because special damages have not been sufficiently pleaded, slander *per quod* also fails. We first address respondents' challenge to the slander *per se* claim.

### (ii)

The alleged defamatory remarks can be fairly divided into two categories. Appellant has alleged statements attacking her professional competence and integrity and statements attacking her sexual activities. As to statements attacking plaintiff's professional competence, it is alleged that:

... defendant Spellman stated:

a) That plaintiff was incompetent;

b) That plaintiff was "out to get" Missouri Valley College;

c) That plaintiff was "out to close private colleges;"

d) That plaintiff was involved in a conspiracy with S__ A__ to use plaintiff's professional position to effect a bad educational program evaluation in further-

**3.** While *Henry v. Halliburton,* 690 S.W.2d 775 (Mo. banc 1985), and *Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506 (Mo. banc 1986), addressed related defamation issues subsequent to the 1980 MAI revisions, neither squarely addressed this issue.

ance of the objectives set forth under subsections (b) and (c) above; ...

An allegation that tends to harm a person in his or her business, trade, profession, or office is one of the traditional categories of slander *per se*. *Carter*, 714 S.W.2d at 509. The words used must impute a lack of knowledge, skill, capacity, or fitness to perform one's duties; or fraud, want of integrity, or misconduct in the line of one's calling. *Brown v. Kitterman*, 443 S.W.2d 146, 154 (Mo.1969). More specifically, to be actionable the allegation must strike at a person's professional competence. *Capobianco*, 812 S.W.2d at 856.

■ Respondent's alleged remarks accuse appellant outright of a lack of skill and fitness to perform her official duties. They portray her as incompetent and prejudiced. Moreover, the accusation that appellant was involved in a conspiracy to "effect a bad education program evaluation" of the College questions her integrity and imputes misconduct in the line of her calling, by suggesting that she is willing to abuse her official position in order to advance her own personal agenda. Under traditional defamation law such statements are slanderous *per se*.

As to the remarks attacking plaintiff's sexual activities, it is alleged that Spellmann stated that "Janet Nazeri lives with S__ A__, who is a well known homosexual and has lived with her for years", and that "You know Ms. Nazeri left her husband and children to live with S__ A__", and that he "would not tolerate fags on campus."

■ Respondents contend that the remarks pleaded in the petition do not insinuate that appellant is a homosexual, an adulteress, or an unchaste person; that she left her husband and family; or that she was involved in criminal activities, as the petition alleges. They also assert any references to homosexuality allude only to appellant's roommate, and therefore they are not defamatory of appellant personally. *See Brown v. Kitterman*, 443 S.W.2d at 154.

As support for these contentions they cite cases which hold that in determining whether a statement of fact is defamatory *per se*, the words must be stripped of any pleaded innuendo, *Langworthy v. Pulitzer Pub. Co.*, 368 S.W.2d 385, 388 (Mo.1963), and construed in their most innocent sense, *Walker v. Kansas City Star Co.*, 406 S.W.2d 44, 51 (Mo.1966). But other precedents hold that the alleged defamatory words must be considered in context, giving them their plain and ordinarily understood meaning. *Brown v. Kitterman*, 443 S.W.2d at 151; *Otto v. Kansas City Star Co.*, 368 S.W.2d 494, 497 (Mo.1963). In *Kirk v. Ebenhoch*, 191 S.W.2d 643, 645 (Mo.1945), it was stated that in a defamation action the words alleged "are to be taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed."

While these standards are not absolutely consistent, we believe they should be read together. Although respondents' argument has technical merit, an objective reading simply does not allow these words an innocent sense. Respondent's comments clearly insinuate that appellant is a homosexual and an adulteress. In our vernacular, "living with" somebody is a common euphemism for a sexual relationship. The allegation that appellant "left" her husband and children to live with a "well known homosexual" would most obviously and naturally be interpreted to mean that appellant abandoned her family for the purpose of engaging in an adulterous and unchaste relationship with a lesbian woman. Moreover, the comments refer to appellant by name. *See Balderre v. Beeman*, 837 S.W.2d 309, 324 (Mo.App.1992) (allegation that plaintiff had "propositioned" business acquaintances, taken in its vernacular meaning, was slanderous *per se* because it branded the plaintiff as a woman willing to barter sexual favors for business gains).

■ An allegation of unchastity is one of the four traditional categories of slander *per se*. *Carter*, 714 S.W.2d at 509. In addition, we have a statute that makes it actionable "to publish falsely and maliciously, in any manner whatsoever, that any person has been guilty of fornication or adultery." § 537.110, RSMo 1986. Thus, the statements pleaded are actionable insofar as they impute adultery and unchastity.

▮ The parties disagree as to whether a false imputation of homosexuality is slanderous *per se.* The few courts that have considered this issue are sharply divided. Some have held that an allegation of homosexuality is defamatory *per se,* in that it implies immorality, unchastity, or criminal conduct. *See, e.g., Schomer v. Smidt,* 113 Cal.App.3d 828, 170 Cal.Rptr. 662, 666 (1980), *disapproved on other grounds, Miller v. Nestande,* 192 Cal. App.3d 191, 237 Cal.Rptr. 359 (1987); *Wetherby v. Retail Credit Co.,* 235 Md. 237, 201 A.2d 344, 346 (1964); *Dally v. Orange County Publications,* 117 A.D.2d 577, 497 N.Y.S.2d 947, 948 (1986); *Head v. Newton,* 596 S.W.2d 209, 210 (Tex.Civ.App.1980).

Other courts, citing the ongoing evolution of our social mores, have come to the contrary conclusion and require proof of damages as a condition of recovery. *See, e.g., Hayes v. Smith,* 832 P.2d 1022, 1025 (Colo. Ct.App.1991); *Boehm v. American Bankers Ins. Group, Inc.,* 557 So.2d 91, 94 (Fla.Dist. Ct.App.1990); *Moricoli v. Schwartz,* 46 Ill. App.3d 481, 5 Ill.Dec. 74, 77, 361 N.E.2d 74, 76 (1977); *Key v. Ohio Dept. of Rehabilitation & Corrections,* 62 Ohio Misc.2d 242, 598 N.E.2d 207, 209 (Ohio Ct.Cl.1990). It is undisputed, however, that an imputation of homosexuality is "at least reasonably susceptible of a defamatory meaning." *Bohdan v. Alltool Mfg. Co.,* 411 N.W.2d 902, 907 (Minn. Ct.App.1987).

The harm inflicted by defamation·is particularly sensitive to the characteristics and situation of the injured party and of the society that surrounds him or her. Attitudes change slowly and unevenly among different groups. Despite the efforts of many homosexual groups to foster greater tolerance and acceptance, homosexuality is still viewed with disfavor, if not outright contempt, by a sizeable proportion of our population. Moreover, engaging in deviant sexual intercourse with another person of the same sex is still a class A misdemeanor in this state. *§ 566.090,* RSMo 1986. *State v. Walsh,* 713 S.W.2d 508, 510–12 (Mo. banc 1986). We hold that a false allegation of homosexuality is defamatory in Missouri.

▮ Furthermore, the "unchastity" category of slander *per se* has been generalized by our court of appeals to make actionable any false allegation of "serious sexual misconduct." *See Balderre v. Beeman,* 837 S.W.2d at 323. We agree with this approach. Matters of sexuality and sexual conduct are intensely private, intensely sensitive, and a false public statement concerning them is particularly harmful. In this society, an untruthful declaration concerning homosexual orientation must be considered as damaging to reputation as one concerning adulterous conduct.

Respondents have also argued that appellant has failed to plead slander *per quod* because she has failed to allege "special damages". The nature of "special damages" was extensively discussed in *Carter v. Willert Home Products, Inc.,* 714 S.W.2d 506, 509 (Mo. banc 1986). Generally, *Carter* held that the special damages element of slander *per quod* required a showing of the loss of something of economic or pecuniary value, notwithstanding the difficulty of placing a value on such a loss.

▮ Admittedly, appellant has not quantified any such loss in her petition. However, she has alleged injury to her "business contacts and standing as a professional", the changing of various job duties, and a loss of reputation and respect resulting in a risk to her employment. Granting to plaintiff the reasonable inferences from these averments, we cannot say that she has failed to plead "special damages" so as to warrant dismissal. Although these averments may well be difficult to value and prove at trial, they are sufficient to withstand an attack on the pleadings.

## D.

While the attacks of respondents upon appellant's allegations of slander *per se* and slander *per quod* have not persuaded us that appellant failed to state a claim thereunder, they do reveal the undue difficulty of use of the traditional *per se* and *per quod* requirements. Although it is clear that respondent's remarks were defamatory, attempts to characterize them as *per se* or *per quod* appear more artificial than real. Unfortunately, the

result of the classifications may have a very real impact more far-reaching than justified. In one case the jury is free to presume damages. In the other the jury is precluded from awarding actual damages unless special damages are proven.

■ Accordingly, while *Dun & Bradstreet, Inc.* would allow us to maintain the *per se/per quod* distinction, we believe the abandonment of this distinction as evidenced by our MAI instructions was and still is correct. By allowing presumed damages for certain words but precluding actual damages for other words without the additional proof of special damages, we believe this rule of the past creates unjustifiable inequities for plaintiffs and defendants alike. We hold that in defamation cases the old rules of *per se* and *per quod* do not apply and plaintiff need only to plead and prove the unified defamation elements set out in MAI 23.01(1) and 23.01(2).[4] In short, plaintiffs need not concern themselves with whether the defamation was *per se* or *per quod,* nor with whether special damages exist, but must prove actual damages in all cases.

### E.

Respondents also attack plaintiff's petition on grounds applicable regardless of whether the *per se/per quod* distinction applies. They attack the lack of specificity of appellant's allegations, the failure of plaintiff to establish causation, and they argue that plaintiff has pleaded only protected opinion and not fact. Respondents fail in these attacks.

### (i)

■ Respondents object to the lack of specificity of appellant's allegations. They assert that in order to state a cause of action for slander, the plaintiff must make her allegations *in haec verba,* or in the exact words alleged to be defamatory. *Brown v. Adams,* 715 S.W.2d 940, 941 (Mo.App.1986). This rule, however, is strictly applicable only to libel and not to slander. *Lorenz v. Towntalk Publishing Co.,* 261 S.W.2d 952, 953 (Mo. 1953). The reason is obvious with a little reflection on the nature of each cause. Libel

is usually published through easily reproducible means such as a writing, printing, broadcast, or electronic communication. Thus, in a libel case it is not unreasonable to expect a verbatim reproduction of the offending statement to assist the court in determining whether it is capable of defamatory meaning.

Slander, on the other hand, consists by definition of mere fleeting speech. The accuracy with which it is pleaded must depend upon the recollection of the original hearer, who might not even be the plaintiff. In such circumstances it is pointless to demand absolute precision. All that is required is that there "be certainty as to what is charged" as the slander. *Id.* at 954; *see also Hester v. Barnett,* 723 S.W.2d 544, 557 (Mo.App.1987).

■ Appellant's petition sets out some statements or portions of statements attributed to respondent in quotes; others are pleaded without quotation marks. We assume that the phrases enclosed in quotes are purported to be reproduced verbatim, or at least closely paraphrased. Conversely, we assume that the unadorned statements are more loosely paraphrased. As set forth in the petition, these statements adequately inform the respondents and the court of the substance of the utterances alleged to be defamatory. Therefore, we find that they are pleaded with enough particularity to state a claim for slander.

### (ii)

■ Respondents argue that the petition establishes no nexus between the statements complained of and the damages claimed, because appellant does not allege that those statements were overheard by her superiors, reported in the newspaper, repeated, or "published" in any form. Respondents misunderstand the nature of the publication element in slander. A publication is simply the communication of defamatory matter to a third person. *Dvorak v. O'Flynn,* 808 S.W.2d 912, 916 (Mo.App.1991). As to the subject matter of Counts I and II, publication occurred at the moment respon-

---

4. The controlling damage instructions are MAI 4.15 and 4.16 which allow for recovery of actual damages and punitive damages, if supported by the evidence.

·dent uttered the allegedly false statements about appellant to each newspaper reporter.

 Respondents are correct in pointing out that the causal relationship between that communication to the reporters, and the damage to appellant's reputation and working conditions, is not explicitly spelled out in the petition. However, mindful of the Court's obligation to grant appellant all inferences that may be reasonably drawn from the facts pleaded, *Sullivan v. Carlisle*, 851 S.W.2d at 512, we conclude that the petition taken as a whole sufficiently pleads causation. Appellant asserts that her coworkers and her professional peers have reacted to the content of respondent's remarks. The inescapable inference is that the remarks, or at least their subject matter, have become known among her acquaintances. That inference is sufficient to overcome the motions to dismiss. Whether or not appellant can meet her burden of proof is a question of fact to be tested by summary judgment or trial, and not by motion to dismiss.

(iii)

 Respondents assert that all of the objectionable remarks are constitutionally protected expressions of opinion. The First Amendment's guarantee of freedom of speech makes expressions of opinion absolutely privileged. Whether an alleged statement is capable of being treated as an opinion or as an assertion of fact is a question of law for the trial court.

 The United States Supreme Court, however, has rejected the notion that there is "a wholesale defamation exemption for anything that might be labeled 'opinion' ", noting that "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990). The test to be applied to an ostensible "opinion" is whether a reasonable factfin-

der could conclude that the statement implies an assertion of objective fact. *Id.* at 21, 110 S.Ct. at 2707; *see also Benner v. Johnson Controls, Inc.*, 813 S.W.2d 16, 20 (Mo.App. 1991). The issue of falsity relates to the *defamatory* facts implied by a statement—in other words, whether the underlying statement about the plaintiff is demonstrably false. Whether the speaker himself subjectively believed the statement is ordinarily not a factor in establishing the defamatory character of the statement, although proof of subjective falsity may serve to establish malice where that is required for recovery. *Milkovich*, 497 U.S. at 20 n. 7, 110 S.Ct. at 2706 n. 7. But neither "imaginative expression" nor "rhetorical hyperbole" is actionable as defamation.[5] *Id.* at 20, 110 S.Ct. at 2706.

 When tested under this standard, none of the statements attributed to respondent comes clearly under the protection of the First Amendment. The remarks *pleaded in the petition* consist of outright expressions of fact and ostensible expressions of opinion which very strongly imply underlying facts. Moreover, the statements do more than merely suggest to the ordinary reader that respondent disagrees with appellant's conduct, and they are not too imprecise to be actionable. *See Halliburton*, 690 S.W.2d at 788–89. To a large degree, these are highly specific statements that declare or imply objective facts. Accordingly, the petition is not subject to dismissal on grounds of the opinion privilege.

 This is not to imply that respondent is categorically precluded from ever proving the applicability of the privilege. Respondent may be able to adduce sufficient evidence to reveal the factual support, if any, for his remarks. *See, e.g., Diez v. Pearson*, 834 S.W.2d 250, 253 (Mo.App.1992).[6] Further, "where a statement of 'opinion' on a matter of public concern reasonably implies false and defamatory facts regarding public

---

5. An unfortunate byproduct of this rule is that the more vituperative and abusive a statement is, the more likely it is to be protected as an expression of opinion. A striking example of this corollary can be found in *Dworkin v. L.F.P., Inc.*, 839 P.2d 903 (Wyo.1992).

6. But note that the Supreme Court's own recapitulation of the holding in Milkovich is that "a defamatory assessment of facts can be actionable *even if* the facts underlying the assessment are accurately presented". *Virginia Bankshares, Inc., v. Sandberg*, —— U.S. ——, ——, 111 S.Ct. 2749, 2761, 115 L.Ed.2d 929 (1991).

figures or officials, those individuals must show that such statements were made with knowledge of their false implications or with reckless disregard of their truth." *Milkovich*, 497 U.S. at 20, 110 S.Ct. at 2707. All we are able to determine at this point is that appellant's petition can survive a facial challenge based upon the opinion privilege.

■ Respondents contend that the allegations dealing with appellant's performance of her job are constitutionally protected as comments upon the motives and conduct of a public official. *Halliburton*, 690 S.W.2d at 780. Criticism of official conduct is protected by the requirement to plead and prove actual malice. *New York Times*, 376 U.S. at 273, 279–80, 84 S.Ct. at 725–26. It is not, however, immune from liability.

In conclusion, we find Counts I and II plead a claim for slander.[7]

### III

Appellant's third count is sounded in prima facie tort. This count incorporates the allegations contained in the prior two slander counts, and avers that if appellant has "not stated a claim under her other Counts then Defendant's actions were lawful and done under proper authority." It also pleads respondent's remarks to the Lindenwood College faculty.

■ Appellant here, as many others before her, misunderstands the nature of a prima facie tort claim. It is not a duplicative remedy for claims that can be sounded in other traditionally recognized tort theories, or a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action. Instead, it is a particular and limited theory of recovery with specific elements, as any other tort.[8] The elements of a prima facie tort claim are: (1) an intentional lawful act by defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of or insufficient justification for defendant's act. *Bandag*, 662 S.W.2d at 552; *Porter v. Crawford & Co.*, 611 S.W.2d 265, 268 (Mo. App.1980).

■ A careful reading of appellant's Count III indicates that she has not pleaded facts that establish the above elements, either as to the allegations incorporated from the prior two counts or as to the newly alleged statements. Counts I and II alleged defamation, an injury to appellant on account of specific *untrue statements*. Recovery for untrue statements should be in defamation. *Barber v. Time, Inc.*, 348 Mo. 1199, 159 S.W.2d 291, 296 (1942). At no point does appellant allege, even in the alternative, that the complained of statements are true. The mere conclusory allegation that appellant might not have "stated a claim under her other counts" does not necessarily establish the subsequent conclusory allegation that respondent's actions "were lawful and done under proper authority." Neither do these two allegations together state facts establishing the requisite elements of a prima facie tort claim. *See ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 383–84 (Mo. banc 1993).

■ In short, prima facie tort is not a duplicative cause of action established either by the failure to prove a recognized tort claim, or by the failure of such a claim on account of a particular defense. Appellant's cause pleaded in Counts I and II is for defamation. While it may be possible for a plaintiff to plead facts that could establish a

---

7. Because plaintiff attempted to follow the traditional per se/per quod distinctions in pleading, the counts contain much surplusage and unnecessary legalese. Upon remand, serious consideration should be given to the recasting of these two counts in accordance with MAI 23.10(1) or MAI 23.10(2).

8. A helpful analysis of the development and nature of prima facie tort is found in *Schmitz v. Smentowski*, 109 N.M. 386, 785 P.2d 726 (1990).

Significantly, New York courts initially required that a petition sounding in prima facie tort could not plead any other tortious activity. *Ruza v. Ruza*, 286 A.D. 767, 146 N.Y.S.2d 808, 810 (1955). While New York has abandoned this requirement, *Board of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 380 N.Y.S.2d 635, 643–44, 343 N.E.2d 278, 284–85 (1975), and Missouri's rule of alternative pleading would require otherwise, *Bandag of Springfield, Inc., v. Bandag, Inc.*, 662 S.W.2d 546, 554 (Mo.App.1983), it clearly indicates the nature of

count in prima facie tort as an alternative to a separate recognized claim, appellant has not done so here.[9]

■ Count III also asserts that respondent told faculty members at Lindenwood College that he had "taken care of" appellant and that she would no longer be on campus. This remark, however, is simply not actionable. It neither imputes misconduct to appellant nor does it question her integrity. Therefore, it could hardly have caused the damages alleged to her reputation and job. Instead, it refers solely to the conduct and prior acts of the respondent himself. While this statement may well be admissible as evidence in support of appellant's other claims, it cannot support a prima facie tort claim in and of itself. Accordingly, we affirm the dismissal of Count III.

## IV

■ The fourth count of appellant's petition seeks damages for intentional infliction of emotional distress, predicated upon the statements to the reporters and to the faculty members already pleaded in Counts I through III. In order to state an emotional distress claim, the plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. *Pretsky v. Southwestern Bell Tel. Co.*, 396 S.W.2d 566, 568 (Mo.1965).

■ This tort, like the prima facie tort, does not lie when the offending conduct consists *only* of a defamation. *Hester v. Barnett*, 723 S.W.2d 544, 561 (Mo.App.1987); *accord Flynn v. Higham*, 149 Cal.App.3d 677, 197 Cal.Rptr. 145, 148 (1983); *Boyles v. Mid–Florida Television Corp.*, 431 So.2d 627, 636 (Fla.Dist.Ct.App.1983), *approved* 467 So.2d 282 (Fla.1985). Damages for mental suffering are recoverable in a slander action. *Carter*, 714 S.W.2d at 510–11. Thus, any recovery for emotional distress as an independent tort would duplicate part of the recovery for a slander claim arising out of the same conduct. *Hester*, 723 S.W.2d at 561. A separate emotional distress claim could be supported by pleading some additional wanton and outrageous act of the defendant, other than an attendant defamatory expression. However, appellant has not done so in her petition.

■ In the case at bar, all the statements to the two reporters concerning appellant are alleged to be false. Accordingly, none of these statements will support an independent claim for infliction of emotional distress. The sole allegation left under this count, then, is respondent's boast to the faculty members that he had "taken care of" appellant. As stated before, this comment is not inherently wrongful and cannot support appellant's claim. Count IV was properly dismissed.

## V

■ Appellant's fifth count claims intentional interference with a business relationship. Tortious interference with a contract or business expectancy requires proof of: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages. *Community Title v. Roosevelt Fed. Sav. & Loan*, 796 S.W.2d 369, 372 (Mo. banc 1990). Count V does not plead any facts that would constitute a breach of appellant's employment relationship (which is itself not explicitly pleaded either). It also fails to make even a cursory allegation of lack of justification. It is apparent, however, that appellant could not state a claim for tortious interference even if she had formally pleaded all the elements of the tort.

■ A plaintiff has the burden of producing substantial evidence to establish a

prima facie tort as a separate and independent theory and not a theory of default.

**9.** Missouri decisions indicate that care should be exercised when weeding out improperly pleaded alternative counts of prima facie tort. Normally, this would be done at the submission of the case to the jury. *Bandag*, 662 S.W.2d at 554. However, when it is clear that the theory is being asserted merely to circumvent an established body of law, or when it is not supported by the pleading of the factual elements giving rise to the claim, the prima facie count may be dismissed earlier. *Catron v. Columbia Mutual Ins. Co.*, 723 S.W.2d 5, 6 (Mo. banc 1987); *Dake v. Tuell*, 687 S.W.2d 191, 193 (Mo. banc 1985).

lack of justification. If the defendant has a legitimate interest, economic or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests. *Id.* In the context of this tort, improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law. *Id.* at 373. Conversely, no liability arises if the defendant had an unqualified legal right to do the act complained of. *Id.* at 372.

Count V focuses on respondent's complaint to appellant's superior at the Department of Education, which allegedly led to her removal as chair of the Lindenwood College evaluation team. But respondent, in his capacity as an administrative officer of an institution that is subject to evaluations conducted by appellant's employer, had a legitimate interest in appellant's performance of her job, at least insofar as it applied to the College.

Accordingly, appellant was required to plead facts tending to show that respondent committed some independently wrongful act in the process of protecting his legitimate interest in her job performance as it affected the college, and of exercising his constitutionally protected right to criticize her work. *See New York Times,* 376 U.S. at 273, 84 S.Ct. at 722. This she failed to do. Absent any evidence of impropriety, respondent's complaint is not in itself actionable as tortious interference.[10]

Count V also attempts to incorporate by reference all the allegations found in the earlier counts. However, appellant does not explain how those remarks to the reporters and the faculty members actually caused or induced any breach in her employment relationship. As noted by our court of appeals, on a motion to dismiss a court is not required

"to shape extraneous recitations in other counts into a cause of action to match the rubric for remedy the pleader attributes." *Hester,* 723 S.W.2d at 561. A cursory reference to facts pleaded in disparate counts, without any attempt to discuss how those facts prove the elements of the specified cause of action, does not state a legally cognizable claim. Thus, the dismissal of Count V was not in error.

### VI

Appellant's sixth and final count alleges "false light" invasion of privacy, based upon the assertions made to the reporters. This Court has declined to recognize a cause of action for invasion of privacy when recovery is sought for untrue statements. *See Sullivan v. Pulitzer Broadcasting,* 709 S.W.2d 475, 478 (Mo.1986). As we noted in *Sullivan,* "The case at bar is nothing more than the classic defamation action where one party alleges that the other published a false accusation concerning a statement of fact". *Id.* at 481. Recovery for untrue statements that cause injury to reputation should be in defamation. *Id.* at 478, *citing Barber,* 159 S.W.2d at 296. Appellant's petition presents no facts that would merit a reconsideration of this ruling. Count VI was properly dismissed.

### VII

We affirm the trial court's judgment dismissing Counts III through VI of plaintiff's petition. The trial court's judgment dismissing Counts I and II is reversed and the cause is remanded.

All concur.

---

10. Spellmann urges this Court to rule that, as a matter of law and public policy, a mere request to remove a public official cannot form the basis of a tortious interference claim. But the issue before us can be resolved without resorting to such a potentially overbroad exception. The requirement to plead and prove an independently wrongful act preserves the public's right to criticize the performance of public officials, while at the same time protecting those officials from unjustifiable threats to their livelihood.