Thomas E. **BAUER,** Appellant,

v.

Anthony D. **RIBAUDO & Roman Zegel Communications, Inc.,** Respondents.

No. 69474.

Missouri Court of Appeals, Eastern District, Division Five.

April 23, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 4, 1996.

Application to Transfer Denied Aug. 20, 1996.

---

Thomas E. Bauer, St. Louis, MO, pro se.

Mariano V. Favazza, Clayton, Kevin M. O'Keefe, St. Louis, for respondents.

HAROLD L. LOWENSTEIN, Special Judge.

This is an appeal from a summary judgment against a petition which alleged the plaintiff was libeled by a defamatory political campaign commercial.

Thomas E. Bauer, the plaintiff, was a candidate for state representative in the August 2, 1994 Democratic primary for the 65th district in the city of St. Louis. Defendant/respondent Anthony D. Ribaudo was the incumbent.

Ribaudo and the other defendant/respondent, Roman Zegel Communications, Inc., produced a television commercial about Bauer. The commercial aired on several different channels. In the commercial, a voice-over relays information about Bauer while the viewer sees a still picture of Bauer riding a donkey. The language of the commercial, the complained-of language underlined, is as follows:

> Meet Tom Bauer and his donkey. Tom's the one in the saddle. He's attacking Tony Ribaudo and calling himself the reform candidate for state representative. Well it was Tom Bauer who was fired from his job at the circuit court for mismanagement. *And it was Tom Bauer that was part of the city court clerk gang, the same gang the Post–Dispatch reported may[1] have stolen over one million dollars.* Tom Bauer taking his donkey and all of us for a ride. Tony Ribaudo, the endorsed candidate for state representative. Paid for by committee to elect Ribaudo, Tina Ribaudo Treasurer.

St. Louis newspaper articles attached as exhibits to the pleadings describe a group of clerks in the city traffic violations bureau who had stolen an unidentified sum (estimated between $250,000 and $1,000,000) from money paid to the city in traffic fines. The clerks were not all identified by name in the article. The articles describe the "public outrage" over "money stolen in the city's largest theft in modern times." Apparently, telephone lines at City Hall "just lit up" with calls from members of the public who were outraged by reports of clerks caught "stuff[ing] cash into anything that would hold money." According to the article, the clerks worked in the traffic bureau office headed by Joseph P. Roddy, then clerk of the city court.

According to Bauer's affidavit, Bauer supported Roddy politically during Roddy's 1982 primary campaign for *circuit court* clerk for the Twenty–Second Judicial Circuit. During 1982, Bauer worked in the circuit clerk's office as a legal advisor under Roddy's supervision.

After 1982, Roddy became *city court* clerk for the City of St. Louis. Bauer's affidavit states that he was never employed by the City of St. Louis or by Roddy in any capacity during the period of time when Roddy served as clerk of the city court, when the group of city court workers committed the thefts. Bauer also stated that he was never connected to the thefts in any way by any media source, other than by Ribaudo's commercial.

In granting summary judgment in favor of defendants Ribaudo and Roman Zegel, the trial court found that: 1) the "allegedly defamatory statement did not accuse plaintiff of committing a crime but rather stated that he was associated with a political group, certain members of which had committed a crime," and 2) "plaintiff did not plead any facts that demonstrate the statement was made with the requisite degree of malice to overcome the qualified privilege to which defendants are entitled."

 Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854

---

**1.** That the theft occurred is not in dispute; the word "may" refers to the fact that the full amount stolen is unknown. The issue here is whether the evidence could allow a jury to find that plaintiff has been falsely accused of committing a crime.

S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04(c). When considering appeals from summary judgments, the court will review the record in the light most favorable to the party against whom judgment was entered. 854 S.W.2d at 376. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. *Id.* This court accords the non-movant all reasonable inferences from the record. *Id.*

Bauer's alleged points of error contesting the trial court's findings are taken up below:

## I. Could the statement be defamatory?

■ Bauer's first argument is that the trial court erred when it failed to apply the Supreme Court of Missouri's test, announced in *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 311 (Mo. banc 1993), to determine whether the statement here was defamatory. A statement is actionable if it falsely imputes to plaintiff the commission of a criminal offense. *See Wahl v. Marschalk,* 913 S.W.2d 432, 434 (Mo.App.1996.)

■ The *Nazeri* test consists of two standards, which "[w]hile ... not absolutely consistent ... should be read together." 860 S.W.2d at 311. The first standard requires that the words must be "stripped of any pleaded innuendo ... and construed in their most innocent sense." *Id.* (citations omitted). The second standard requires that alleged defamatory words "must be considered in context, giving them their plain and ordinarily understood meaning," and the words "are to be taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed." *Id.* (citations omitted).

Here, the wording of the judgment makes it unclear whether the trial court applied *Nazeri* and construed the statement in its most obvious and natural sense. The trial court looked at the words under an "innocent interpretation rule" gleaned from 53 C.J.S. *Libel and Slander* § 14 (1987) and found that the statement did not accuse plaintiff of committing a crime but rather accused him of being a member of a political group, some members of which had committed a crime.

■ It is unclear to this court whether the trial court considered the meaning of the words in their most obvious and natural sense, according to the ideas they were calculated to convey to the audience. Even if the trial court did apply the *Nazeri* test, this court does not think that it correctly concluded that the statements were, as a matter of law, not actionable.

Again, the complained-of statement was the following:

> It was Tom Bauer that was part of the city court clerk gang, the same gang the *Post–Dispatch* reported may have stolen over one million dollars.

To say as a matter of law that the statement could not obviously and naturally allege plaintiff committed a crime is disingenuous. The thieving city court clerks, according to the newspaper articles attached to the pleadings, were infamous as a group in St. Louis. The use of the phrase "city court clerk gang," in this context, clearly implies specific criminal wrongdoing. *Every single member* of what the public considered the "city court clerk gang" had committed the specific crime of theft of traffic fine money. A jury could find that the statement clearly implies Bauer committed a crime.

Ribaudo's argument that the statement innocently meant that Bauer was a member of Roddy's "political faction," not that Bauer was a member of a criminal "gang," is not convincing. First, Roddy was not mentioned in the commercial, so it is hard to see how the audience would connect the two men through the statement. Roddy's political faction is a group whose membership is not limited to the small number of thieves in the "city court clerk gang." Further, Bauer was never employed with or associated with the city clerks in any way.

It is helpful here to compare the facts of *Nazeri.* In *Nazeri,* 860 S.W.2d at 311, the alleged defamatory statement included the following:

> Janet Nazeri lives with S.A., who is a well-known homosexual and has lived with her

for years ... [y]ou know, Ms. Nazeri left her husband and children to live with S.A..

The *Nazeri* court, reversing the dismissal entered by the trial court, was not convinced by defendant's argument that the statement only alleged that S.A. was a homosexual, not necessarily Nazeri. The court said "an objective reading simply does not allow these words an innocent sense." *Id., see also Wahl,* 913 S.W.2d at 434. The court construed "living with" as a euphemism for a sexual relationship, and said it would "most obviously and naturally be interpreted to mean that [plaintiff] had abandoned her family to engage in an adulterous and unchaste relationship with a lesbian woman." 860 S.W.2d at 311.

Here, the statement clearly could be most obviously and naturally interpreted to mean Bauer committed a crime. The jury can find either that the statement is defamatory or that it is not, but the issue is one for the jury. The point is granted.

## II. Could there be actual malice?

The question remains whether Bauer pleaded any facts demonstrating the statement was made with the requisite degree of malice to overcome the qualified privilege defendant has because Bauer is a public figure. Bauer, as a candidate for public office, is a public official or a public figure. *See Monitor Patriot Co. v. Roy,* 401 U.S. 265, 270–72, 91 S.Ct. 621, 624–26, 28 L.Ed.2d 35 (1971). Missouri Approved Instructions No. 23.06(2), incorporating the test of *New York Times Co. v. Sullivan,* 376 U.S. 254, 283–84, 84 S.Ct. 710, 727–28, 11 L.Ed.2d 686 (1964), requires that when a public figure or official is involved in a defamation suit, a finding of defamation must be supported by clear and convincing proof that a libelous falsehood was made with actual malice—with knowledge that it was false or with reckless disregard of whether it was false or not at a time when defendant had serious doubt as to whether it was true.

The court found that Bauer did not "plead any facts that demonstrate" actual malice. In his petition, Bauer followed the elements of MAI 23.06(2) and alleged that "[t]he complained-of language was prepared, autho-

rized, and caused to be broadcast with either knowledge that it was false or with reckless disregard for whether it was true or false at a time when defendants had serious doubt as to whether it was true."

In this case, the trial court had before it the pleadings, the affidavits of Bauer and Ribaudo, and the deposition of Bauer, and this court now reviews *de novo* the facts therein and inferences therefrom to determine if there is a genuine issue of fact. *See ITT Commercial Fin. Corp.,* 854 S.W.2d at 376.

At the summary judgment stage in a defamation action which has constitutional implications, a public figure plaintiff is required only to submit evidence which shows a genuine issue of material fact from which a reasonable jury could find actual malice with convincing clarity. *DiLorenzo v. New York News,* 7 Media L.Rep. (BNA) 1452, 1453 (N.Y.A.D. May 7, 1981). Concern for the First Amendment should not be transformed into a requirement that the plaintiff prove actual malice to the motion court. *Id.*

Ribaudo's affidavit does not allege that he actually believed Bauer was guilty of a crime. If the commercial falsely accused Bauer of committing a crime, then there is a genuine issue of fact for the jury whether the communication was made with actual malice. *See Thurston v. Ballinger,* 884 S.W.2d 22, 27 (Mo.App.1994). Given the statement linking Bauer to a crime with no apparent basis in fact, the facts and inferences from the evidence here could support a jury finding of actual malice. The point is granted.

The summary judgment was improper; however, this court's ruling does not mandate or presuppose any result the jury may reach. The summary judgment against Bauer is reversed, and the case is remanded.

CRANE, C.J. and AHRENS, J., concur.