Joseph A. MAY, D.D.S. and Glenda S. Scoville, Appellants,

v.

GREATER KANSAS CITY DENTAL SOCIETY, Robert L. Nelson, D.D.S., et al., Respondents.

No. WD 47350.

Missouri Court of Appeals, Western District.

Nov. 2, 1993.

Kent Kersten, Kansas City, for appellants.

Eddie Dougherty, Sam Colville, Richard T. Merker, Kansas City, for respondents.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

HANNA, Judge.

This appeal arises from a six-count petition filed by plaintiff Joseph A. May (May), a practicing dentist, and his wife, plaintiff Glenda Scoville (Scoville), against the Great-er Kansas City Dental Society (Dental Society), and defendant Dr. Robert L. Nelson (Nelson), the president of the Dental Society. The trial court dismissed all counts on the defendants' motion to dismiss.

All six counts asserted by plaintiffs May and Scoville arise from the publication of an article in a newsletter written by defendant Nelson. Four counts of the petition are actions on behalf of plaintiff May: libel per se, libel per quod, interference with economic advantage, and directors' negligent supervision of an officer. Plaintiff Scoville alleges two causes of action: intentional infliction of emotional distress and the wrongful death of an unborn child. Both of plaintiff Scoville's claims are based on the miscarriage of a three-month fetus which she alleges occurred after reading the subject article.

In the summer of 1989, the Internal Revenue Service (IRS) mailed an inquiry to several hundred dentists in the Kansas City area seeking information about Dr. May. Specifically, the inquiry requested names of and information about patients whom the various dentists had referred to Dr. May. Dr. Nelson was one of the dentists who received a letter and IRS summons concerning patients he may have referred to Dr. May. That IRS summons was the incentive for his article.

On or about April 1, 1990, Dr. Nelson published an article in The Professional Journal of the Greater Kansas City Dental Society, the Midwestern Dentist, entitled "For Whom the Bell Tolls, or Beware: The G–Man Cometh!" The Midwestern Dentist is a monthly newsletter published by the Dental Society and at the time of the article, Dr. Nelson was the president of the Dental Society. At the time, Dr. May specialized in endodontics.

Although the article does not mention May by name, he claims to be the subject of the article because it contains a reference to an IRS investigation of "one of our profession." He argues that the article contains offensive references to him. The objectionable terms are: "yo-yo," "wacko," "at odds with the federal government," and "axe murderer." Plaintiff May argues that as a result of defendant Nelson's article, he lost patient refer-

rals and eventually, in 1992, closed his dental practice due to a lack of referrals.

Plaintiff Scoville is married to May. Immediately after reading the article, she claims to have suffered extreme emotional distress and trauma. Within two hours after reading the article, she claims to have begun hemorrhaging and within five days, she suffered a miscarriage of her three-month old fetus.

Nine members of the Dental Society's Board of Directors were also sued under a negligent supervision theory. The claim against the Board members was subsequently dismissed by plaintiffs and, therefore, only the Dental Society and Nelson remained as defendants.

The issues were briefed on the defendants' motions to dismiss filed in the trial court. The court sustained the motion and dismissed the plaintiffs' petition holding that the petition failed to state a cause of action. The trial court also overruled the plaintiffs' motion for leave to file a first amended petition. A subsequent motion to reconsider was overruled. This appeal followed.

■ Our review of the dismissal of plaintiffs' petition is to treat all facts alleged as true and to reverse the trial court's order only if those facts as alleged in the petition would, upon proof, entitle the plaintiffs to relief. *Rahm v. Missouri Pub. Serv. Co.*, 676 S.W.2d 906, 908 (Mo.App.1984). A motion to dismiss is the proper procedural tool to challenge a petition and to obtain a decision as to whether it alleges sufficient facts to constitute a cause of action. *Morgan v. Morgan*, 555 S.W.2d 378, 380 (Mo.App.1977).

Plaintiffs first two points concern May's claim for libel per se and libel per quod, which we will consider together. The same statements in the newsletter will constitute either libel per quod or libel per se and therefore, are alternate pleadings. Our Supreme Court has recently held that when considering defamation cases, "the old rules of per se and per quod do not apply and plaintiff need only plead and prove the unified defamation elements set out in MAI 23.01(1) and 23.01(2)." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 313 (Mo.

banc 1993). The obliteration of this distinction does not interfere with our review of the trial court's ruling. In both of plaintiff May's counts for per se and per quod defamation, he ascribes the common ordinary meaning to the words used, and does not plead extrinsic facts demonstrating that the offending words are something other than their commonly understood meaning. Plaintiff concedes that the words stand by themselves.

■ Whether words are libelous per se is a question of law which a court may properly decide on a motion to dismiss. *Buller v. Pulitzer Publishing Co.*, 684 S.W.2d 473, 477 (Mo.App.1984). A motion to dismiss the petition for failure to state a claim upon which relief may be granted does not admit the construction of the words pleaded in an innuendo, and whether the alleged libelous words, when given their natural meaning, are capable of the defamatory meaning ascribed to them is a question of law for the court to decide on a motion to dismiss. *Brown v. Kitterman*, 443 S.W.2d 146, 150 (Mo.1969).

Plaintiff May contends the words libeled him in his professional capacity as a dentist. To libel an individual's professional standing, the words must assign a lack of knowledge, skill, capacity or fitness to perform or discharge his duties. *Id.* at 154. The article will not be set forth in full as much of it is not pertinent to a resolution of the issues here involved.

■ In order for the words to be actionable, they must refer to the plaintiff and to be understood by others as referring to the plaintiff. *Nordlund v. Consolidated Elec. Co-Op.*, 289 S.W.2d 93, 95 (Mo.1956); *Norris v. Brady*, 234 Mo.App. 437, 132 S.W.2d 1059, 1061 (1939); *Byrne v. News Corp.*, 195 Mo. App. 265, 190 S.W. 933, 935 (1916). Therefore, we are concerned first with whether the offensive words are "of and concerning" the plaintiff. *New York Times Co. v. Sullivan*, 376 U.S. 254, 288–92, 84 S.Ct. 710, 730–33, 11 L.Ed.2d 686 (1964). If some question exists as to whether the offensive words are "of and concerning" the plaintiff, the fact dispute is for the jury. See *Hoeffner v. Western Leather Clothing Co.*, 161 S.W.2d 722, 726–27 (Mo. App.1942). Likewise, if the words are unam-

biguous as to the person referred to, the issue may be one of law.

■■ In Nelson's article there is no reference to May by name. Although it is not necessary that the defamatory statements refer specifically to the plaintiff by name, it must be shown that the reader reasonably understood the defamatory words to have been directed to plaintiff. *Byrne,* 190 S.W. at 935. The article commences with a reference to "one of our profession."

Summons:

Some of us in the GKCDS have recently been through some soul searching in response to the above summons [1] sent out by the IRS. It seems one of our profession is being investigated by the IRS and many of us received a letter earlier last year asking for our cooperation by sending the government names of patients we had referred to this specialist.

May contends he was identified as the subject of the article, at least as to those dentists who received a summons, because he was the subject of the IRS investigation. From the record before us, we conclude that there was no knowledge of any other local dentist under investigation by the IRS during the relevant time period.

Our inquiry is not what the writer intended, but rather whether a person reading the article would reasonably understand the offending words to refer to the plaintiff. *Id.* All of the offending terms, with the exception of yo-yo, are found in this paragraph:

Do you have to get a consent form for each patient you refer to a specialist that lists all the known dental problems and the possibility the person may be a wacko, or at odds with the federal government or an axe murderer? Should you inform your patient that because he/she has a dental problem, their name may have to be released to a dreaded government agency such as the IRS, OSHA, FTC or some other acronym?

■ We do not agree with the plaintiff's argument that these terms refer to plaintiff May. A writing claimed to be libelous must be interpreted from its four corners and must be given its ordinary meaning in the plain and popular sense. *Swafford v. Miller,* 711 S.W.2d 211, 213 (Mo.App.1986). In this case, Nelson has addressed a serious situation presented by the IRS summons sent to various dentists in the area and has asked a rhetorical question of some importance dealing with the government's right to obtain patients' names and patient information. He describes his experience with the IRS as creating a dilemma between his legal obligation to provide the information and a breach of his professional relationship with his patients. The article is written in a humorous vein and responsibly addresses a significant problem that has a basis in fact and it attempts some solutions in the event some governmental agency decides to investigate a member of the profession. The author suggests that such an investigation could innocently befall any dentist and implores that this sort of handiwork is injurious to one's "good name in the community" and one's standing with creditors. An objective reading does not allow the interpretation that plaintiff maintains. The words of which plaintiff complains are used in a general sense and do not refer to him or any particular dentist. The words present a hypothetical "what if" scenario when a dentist refers a patient to a specialist for dental work. A reader of the article would not reasonably understand the objectionable words to be "of and concerning" plaintiff May.

■ In the text, the word "yo-yo" is different and is located in another part of the article. This word presents two questions: is it "of and concerning" the plaintiff and, if so, is it defamatory? The word is referenced in the article as follows:

I called my attorney, the Greater Kansas City Society office, the American Dental Association attorney, Roger Weis with the Missouri Dental Association and the Missouri State Dental Board to see what my options were, and what was the legal implication of distributing patient names, addresses and phone numbers without their consent. My attorney said to give them the names and don't mess around.

1. The contents of the summons are not set out in the article, just the word, "summons."

"You could petition the court to determine cause, etc., but why mess with them for some yo-yo?" he said. The American Dental Association returned my call later that day, and the attorney told me she could not provide legal advice, only my attorney licensed to practice in Missouri could do that, but that precedent probably allowed the IRS to obtain that information.

The reference in this paragraph is to an individual who was under the scrutiny of the IRS. The reader could assume that the attorney knew May was the subject of the IRS investigation and, therefore, the comment could reasonably be understood to have referred to May. Interpreting the attorney's comment to "some yo-yo" as an abstract reference to any individual who became involved with the IRS might be acceptable except that a number of dentists had previously received an inquiry from the IRS about May. Whether this reference is "of and concerning" May cannot be determined as a matter of law and, therefore, is not a proper issue for determination on a motion to dismiss. Having established that this comment could be reasonably understood to refer to plaintiff, we determine whether the word was defamatory.

The plaintiff suggests that "yo-yo" denotes an individual who is not stable. While "yo-yo" cannot be categorized as an accolade, it is difficult to define precisely. It is probably susceptible to various interpretations, most of which would not be flattering. It is voguish slang casting one in an unfavorable light and possibly has some relationship to the movement and uses of the more familiar meaning of the word: a double-disc cylinder-shaped object that falls and raises by manipulation of a string.

In the first instance, whether the words are defamatory is a question of law for the court's determination, *Morton v. Hearst Corp.,* 779 S.W.2d 268, 271 (Mo.App.1989), and the offending words must be considered in the context of the entire publication. *Buller,* 684 S.W.2d at 477. The title of the article—"For Whom the Bell Tolls, or Beware: The G-Man Cometh!"—is a factor to be considered if the title accurately reflects the contents of the article. *Hylsky v. Globe Democrat Publishing Co.,* 348 Mo. 83, 152 S.W.2d 119, 121–22 (1941); see also 53 C.J.S. Libel & Slander § 14 (1987). In this respect, the text of the article and its title convey a legitimate concern regarding the invasion of the patients' privacy by the federal government and the effect of a mistaken IRS probe on the reputation of any dentist investigated. Later in the article, the author observes the sobering impact of a visit from the IRS to one's office about a patient referred to "this dentist based on the knowledge he was a competent specialist, licensed by the state and probably convenient to your patient[.]" The theme of the article and title is one that expresses concern with the IRS's attempts to obtain information from the files of a professional. The reference to "some yo-yo" is in this context.

The court in *Coots v. Payton,* 365 Mo. 180, 280 S.W.2d 47 (banc 1955), defined defamation as "to speak evil of one maliciously, to dishonor, to render infamous." *Id.* at 53. The court went on to observe that the offending language is not libelous simply because it is unpleasant and annoys or irks plaintiff and subjects him to jests or banter, so as to affect his feelings. *Id.* at 54. The attorney's response to Nelson's inquiry could reasonably be understood as an expression of frustration that a serious problem had arisen because a dentist had gotten himself crosswise with the government. Such a construction of the comment would not be construed to harm and injure the reputation and character of plaintiff so "as to provoke him to public wrath and expose him to public hatred, contempt, and ridicule...." *Id.* at 55.

The offending word takes its meaning from the context of the article. "Yo-yo" is used in the context of the attorney's comment about plaintiff's involvement with the IRS. The word does not attach to, nor is it descriptive of May in his professional capacity. It does not make reference to a professional quality, the absence or presence of which is essential to the practice of dentistry. The word may have a different meaning to different people, but considering the word in the context of the whole article, we conclude that it does not carry a defamatory meaning within the definition of the law. The word is not used

to describe him as one having a lack of knowledge, skill, or capacity to perform his duties. See *Brown,* 443 S.W.2d at 154. The plaintiff fails to sustain the meaning he ascribes to the word, an unstable person in his professional capacity, as a meaning reasonably understood by the publication's readership. See *Nordlund,* 289 S.W.2d at 95.

■ Plaintiff May next complains that the trial court erred in overruling his cause of action for interference with economic advantage because it was properly pleaded in his petition. The elements of interference with economic advantage are: 1) a contract or valid business relationship or expectancy; 2) knowledge by the defendant of the contract or relationship; 3) intentional interference by the defendant which induces the breach of contract or relationship; 4) the absence of justification; and 5) resulting damages. *Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n,* 670 S.W.2d 895, 904–05 (Mo.App.1984). The defendant responds, among other things, that the third element is not satisfied. We agree that this is dispositive of the point.

■ Plaintiff May argues that his petition alleges that Nelson intended his actions in publishing the defamatory article in order to interfere with plaintiff's relationships and that Nelson "intentionally caused defamatory matter to be published . . . ." He also argues that he pleaded that the interference with his professional relationships "was the material and probable result proximately caused by defendant Nelson's libelous publication." The plaintiff repeatedly highlights the defamatory nature of the article as the means used by Nelson to intentionally interfere with his business relationships.

To state a successful cause of action, the plaintiff must prove that the article was wrongful—in this case, defamatory—or the cause of action fails. This element requires the unwarranted interference of a third party. *Tri–Continental Leasing Co. v. Neidhardt,* 540 S.W.2d 210, 216 (Mo.App.1976). Liability under this element of the tort has the same deficiency as in the plaintiff's cause of action for defamation. The article, read as a whole, cannot be said to refer to the plaintiff or be considered defamatory to him in his professional capacity. Failing that, the third element of this cause of action fails because plaintiff is unable to prove (or plead) that defendant's act caused a breach of the relationship. *Id.* at 215. Since we hold that there was no defamatory publication, this cause of action fails because, as a matter of law, it cannot be said that defendant's article was an active and affirmative step to induce a breach of the plaintiff's professional relationship with referring dentists. See *Id.* at 217. Point denied.

■ Plaintiff May argues that the trial court erred in denying his motion for leave to file an amended petition. The amendment did not allege new facts or a cause of action against the defendants, but rather, merely sought to allege that defendant Nelson had no justification to interfere with the economic advantage of plaintiff May.

■ The Missouri Rules of Civil Procedure have always stressed liberality in applying amendments to pleadings, but a party does not have an absolute right to file even a first amended petition. *Jones v. Williams,* 357 Mo. 531, 209 S.W.2d 907, 911 (1948). In *Baker v. City of Kansas City,* 671 S.W.2d 325 (Mo.App.1984), the court determined that the best measure of whether abuse of discretion occurred at the denial of leave to amend is a question of whether justice was furthered or subverted by the course taken. *Id.* at 329 (citing *Scott v. Dowling,* 636 S.W.2d 176, 178 (Mo.App.1982)).

The proposed amendment here failed to cure the defects in the cause of action. The intentional interference cause of action was premised on the alleged libelous statements in defendant's article and we have found the article not to be defamatory. Accordingly, there is no wrongful conduct and the proposed amendment to the original petition would not have made a difference in either the trial court's or this court's decision to dismiss plaintiff's cause of action. There was no abuse of discretion in failing to allow the plaintiff to amend his petition.

The next two points concern plaintiff Scoville's claims which arise from her reading of the article about her husband. She alleged

the intentional infliction of emotional distress and the wrongful death of an unborn child.

Plaintiff Scoville's claim for intentional infliction of emotional distress finds its genesis in *Pretsky v. Southwestern Bell Tel. Co.*, 396 S.W.2d 566 (Mo.1965), in which the Supreme Court of Missouri adopted the Restatement (Second) of Torts § 46, providing for that cause of action. The cause of action is premised upon "extreme and outrageous conduct" which was defined in Pretsky as follows:

> [W]here the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!

*Id.* at 568–69 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

The plaintiff argues that her cause of action is based on the characterizations "yoyo," "wacko," "at odds with the federal government," and "axe murderer," maintaining that such a recitation would cause the average member of the community to exclaim "outrageous!" The petition alleges that Scoville is a member of the immediate family of May (she was married to him) and that she read the article and suffered extreme emotional distress and trauma. She contends that within two hours, she began hemorrhaging and within five days, she miscarried her three-month old fetus.

■ It is for the trial court to determine in the first instance whether the alleged wrongful conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Frye v. CBS Inc.*, 671 S.W.2d 316, 319 (Mo.App.1984).

■ Plaintiff Scoville couches her cause of action on the defamatory statements as the extreme and outrageous conduct. We have held that three of the statements did not make reference to her husband and that the remaining word was not libelous. The article cannot be considered conduct so outrageous in character and so extreme in degree as to go beyond all bounds of decency. We do not regard it as atrocious and utterly intolerable in a civilized community. As a matter of law, plaintiff Scoville's claim for intentional infliction of emotional distress fails.

■ Plaintiff Scoville also maintains a cause of action for the wrongful death of her unborn child, and argues that the trial court erred by dismissing that cause of action. She claimed to have suffered a miscarriage while three months pregnant as a result of reading the article in question. Her cause of action for the wrongful death of her unborn child is pursuant to § 537.080, RSMo 1979.

This point is controlled by *Rambo v. Lawson*, 799 S.W.2d 62 (Mo. banc 1990), in which the court held that the plaintiff could not state a claim for the wrongful death of an unborn child. *Id.* at 64. In response, plaintiff Scoville argues that the recent criminal case, *State v. Knapp*, 843 S.W.2d 345 (Mo. banc 1992), controls the wrongful death statute. Knapp dealt with the application of § 1.205, RSMo 1986 [2] to the criminal involuntary manslaughter statute, § 565.024, RSMo 1986. The Knapp court held that the definition of the term "person" in § 1.205 did apply to § 565.024. However, the court stated, "Without deciding whether § 1.205 applies to other statutes, we conclude that it applies at least to the involuntary manslaughter statute." *Id.* at 347–48.

A significant basis for the Knapp court's decision was that § 1.205 and the manslaughter statute were both "passed in the same legislative session, on the same day, and as

**2.** Section 1.205 provides, in relevant part, that the General Assembly finds that the life of each human being begins at conception, unborn children have protectable interests in life, health, and well-being and that natural parents of unborn children have a protectable interest in the life, health and well-being of their unborn children. Effective January 1, 1988, the statute directs that the laws of this state shall be interpreted to acknowledge that an unborn child has all the rights, privileges and amenities available to other persons of this state and that the term "unborn child" shall include all unborn children from the moment of conception until birth at every stage of biological development.

part of the same act, H.B. 1596." *Id.* at 347. This is not true with respect to the wrongful death statute. The Knapp court rejected the defendant's argument that construing § 1.205 as applicable to the criminal statute would conflict with the holding in Rambo when it stated, "In Rambo, a plurality of this Court ruled that the term person does not include a nonviable fetus, and therefore, a civil cause of action for the wrongful death of a nonviable fetus will not lie." *Id.* at 349. The Rambo decision controls and decides this point against plaintiff Scoville.

Defendant Dental Society has filed a motion to strike certain pages from the legal file that was filed with the court. Motion overruled.

Judgment Affirmed.

All concur.