903 F.Supp. 1327 (1995)
Pamala KLEIN and Norma Howes, Plaintiffs,
v.
Jeffrey S. VICTOR and Open Court Publishing Company, Incorporated, Defendants.
No. 4:94CV1739 CDP.
United States District Court, E.D. Missouri, Eastern Division.
October 13, 1995.
*1328 *1329 Robert L. Carter, Reinert and Duree, St. Louis, MO, Don W. Weber, Collinsville, IL, for Pamala Klein, Norma Howes.
W. David Wells, Thompson and Mitchell, St. Louis, MO, Leonard J. Frankel, Of Counsel, Vines and Frankel, Joseph P. Danis, Carey and Danis, St. Louis, MO, for Jeffrey S. Victor.
W. David Wells, Thompson and Mitchell, St. Louis, MO, Julie A. Bauer, Timothy J. Rivelli, Wiston and Strawn, Chicago, IL, Joseph P. Danis, Carey and Danis, St. Louis, MO, for Open Court Publishing Company Incorporated.

MEMORANDUM AND ORDER
PERRY, District Judge.
This matter is before the Court on defendants' motions to dismiss for failure to state a claim upon which relief may be granted.
In 1993, defendant Open Court Publishing Company, Inc., published defendant Jeffrey S. Victor's book, Satanic Panic: The Creation of a Contemporary Legend. Plaintiffs Pamala Klein and Norma Howes, in their twelve-count petition (initially filed in the Circuit Court for the City of St. Louis), seek damages from both defendants. The twelve counts are labelled, variously, libel per se, libel per quod, punitive damages, libel-actual malice, "false light" invasion of privacy, and intentional and negligent infliction of emotional distress. The book, which was attached to plaintiffs' complaint as an exhibit, purports to be an expose of the claims made by persons who believe they have been victimized by Satanic cults. Both plaintiffs are reported by the book to be involved in investigation and treatment of ritual abuse.
Both defendants have now moved to dismiss the complaint for failure to state a claim. Defendants maintain that the statements complained of by plaintiffs are not actionable, either because they are not defamatory, do not imply assertions of objective fact, do not refer to plaintiffs, or are privileged. *1330 Defendants also argue that plaintiffs have failed to plead specific facts to support their claim that defendants knew or had reason to suspect that the statements were false. Defendants move to dismiss Counts V and XII, the "false light invasion of privacy" counts, on the grounds that said claims may not be asserted in a defamation case under Missouri law. Finally, defendants request dismissal of plaintiff Klein's emotional distress claims (Counts VI and VII) on the grounds that such claims cannot arise under Missouri law when defamation is the sole offending conduct. Klein now concedes that Counts VI and VII fail to state a claim under Missouri law, but both plaintiffs contest all the other grounds raised by the motions to dismiss.

I. Defamation

Under Missouri law, a claim for defamation will survive a motion to dismiss if the communication alleged in the petition, together with matters of inducement and innuendo alleged in the petition, is capable of a defamatory meaning. See Coots v. Payton, 365 Mo. 180, 280 S.W.2d 47, 51 (1955); Swafford v. Miller, 711 S.W.2d 211, 213 (Mo.Ct. App.1986). In considering a motion to dismiss, the Court must view the facts alleged in the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, whether the allegedly libelous words are defamatory is a question of law which the court may decide on a motion to dismiss. See Buller v. Pulitzer Publishing Co., 684 S.W.2d 473, 477 (Mo.Ct.App.1984); Brown v. Kitterman, 443 S.W.2d 146, 150 (Mo.1969). The allegedly defamatory words must be read in connection with the whole publication, rather than in isolation. Missouri Church of Scientology v. Adams, 543 S.W.2d 776, 777 n. 2 (Mo.1976).
Evaluation of the plaintiffs' complaint here is complicated by the fact that each plaintiff uses four separate counts to allege a single claim. That is, plaintiffs each allege libel per se and libel per quod in separate counts, and also each use two separate counts to seek punitive damages. Missouri courts no longer recognize separate causes of action for libel per se and libel per quod. See Nazeri v. Missouri Valley College, 860 S.W.2d 303, 313 (Mo. en banc 1993). Thus, the undersigned will refer to Counts I through IV and VIII through XI collectively in discussing each plaintiff's claim for defamation.
In Nazeri, after an extensive discussion of the history of defamation law in Missouri, the Missouri Supreme Court expressly approved the formulation of the tort as expressed in the Missouri Approved Instructions, § 23.06(1) and (2). Section 23.06(1) applies to private figures; section 23.06(2) applies to public figures where the actual malice standard of New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) applies. In Counts IV and XI plaintiffs have alleged the actual malice standard, so, for purposes of the motion to dismiss the Court will assume that MAI § 23.06(2) applies. Under that formulation, the elements of a claim for defamation are:
(1) defendant published the statement which plaintiffs allege to be defamatory;
(2) that statement was false;
(3) defendant published the statement either with knowledge of its falsity or with reckless disregard for whether it was true or false at a time when defendant had serious doubts as to whether it was true;
(4) the statement tended to deprive the plaintiff of the benefit of public confidence and social associations;
(5) the statement was read by others; and
(6) plaintiff was thereby damaged.
See MAI § 23.06(2); see also Nazeri v. Missouri Valley College, 860 S.W.2d 303, 312 (Mo. en banc 1993).
Layered on top of the state-law tort of defamation, of course, is the first amendment, which protects freedom of expression and guarantees that issues of public concern may be freely and openly debated. Although many courts have drawn a distinction between "fact" and "opinion" in determining what is protected speech, and although the Missouri Supreme Court stated in Nazeri that "expressions of opinion [are] absolutely privileged," the Supreme Court, in Milkovich *1331 v. Lorain Journal Co., 497 U.S. 1, 21, 110 S.Ct. 2695, 2707, 111 L.Ed.2d 1 (1990), rejected a separate constitutional privilege for a statement merely because it may be labelled "opinion" or couched with the phrase "in my opinion." The Court in Milkovich did agree that for a "statement on matters of public concern" to be actionable it must be "provable as false", at least where, as here, a media defendant is involved. There is no doubt that child abuse, ritual or otherwise, is a matter of public concern.
Thus, to determine whether the alleged defamatory statement is protected speech, the Court must, as a threshold matter, determine whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact. Milkovich, 497 U.S. at 19-20, 110 S.Ct. at 2706-2707; Nazeri, 860 S.W.2d at 313. One Circuit has stated the analysis required by Milkovich in the following way:
As a starting point for our analysis, we adopted a three-part test: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false.
Partington v. Bugliosi, 56 F.3d 1147, 1153 (9th Cir.1995).

A. The Allegedly Defamatory Passages

Plaintiff Klein's allegations of defamation, contained in paragraph 4 of Count I, are set out in full here:
4. In 1993, the Defendants caused to be created, promoted, and published a certain book known as Satanic Panic. In said book, Defendants falsely charged Plaintiff, Pamala Klein, with an inability to do her job in her chosen profession or occupation and with a lack of skill or knowledge in the professional conduct of her profession or occupation, to wit:
(a) Defendants falsely accused Plaintiff of being a "moral crusader" (Satanic Panic, pages 242-246). Defendants then defined a moral crusader as a person who turns symbolic crusades "... into witch hunts for deviants ...". Defendants further defined a moral crusader as a person in whom "... the guilt or innocence of individuals accused of deviance from those values is likely to be a less significant concern for moral crusaders." Defendants further stated that moral crusaders "... are likely to assume the guilt of those who are accused ...". (Id. page 209).
(b) Having defined Plaintiff, Pamala Klein, as a "moral crusader", Defendants then stated that "The claims of moral crusaders serve to construct a definition of a new form of deviance through rhetorical devices rather than through careful scientific investigation." (Id., page 212).
(c) Defendants further misrepresented the professional career of Pamala Klein with regard to the child abuse therapist/investigative profession by falsely stating that Klein had fomented "... unsubstantiated child abuse accusations ..." by appearing in certain training video tapes produced by Cavalcade Productions of Ukiah, California (Id., page 122).
(d) The Defendants falsely stated that the Plaintiff, Pamala Klein, was "... terminated by the Governing Board ..." of the Hanover Township Mental Health Board in 1989 (Id., page 243).
(e) The Defendants further falsely stated that "... Klein used questionable methods of interviewing, asked leading questions, and drew conclusions not based upon facts." (Id., page 246).
(f) In imputing bad motives to Plaintiff in the exercise of her chosen profession and occupation, the Defendants falsely stated that "In the process, Pamala Klein transformed a moral enterprise into a lucrative business enterprise." (Id., page 242).
(g) In imputing a lack of knowledge or skill and improper motives to the Plaintiff in the conduct of her profession or occupation, Defendants falsely stated "Klein has made a very profitable business out of the satanic cult scare." (Id., page 244.)
(h) In imputing a lack of skill or knowledge and bad motives in pursuing her professional career or occupation, the Defendants falsely stated rhetorically "Are there *1332 many more moral crusaders, like Pamala Klein, profiting from the satanic cult scare?" (Id., page 246.)
(i) The Defendants further falsely stated that "... the program relied upon American `expert', Pamala Klein as a consultant for background information about Satanic cults and `ritual abuse.'" (Id., page 244).
(j) The Defendants falsely stated "It was at these conferences that Klein made the infamous allegations about babies in the United States being cooked by Satanists in microwave ovens." (Id., page 244).
Plaintiff Howes' allegations of defamation, contained in paragraph 4 of Count IX, are set out in full as follows:
4. In the book, Satanic Panic, Defendants falsely accuse Plaintiff, Norma Howes, of being a "moral crusader" and with having fomented a "witch hunt" in England. Specifically, Defendants falsely stated in Satanic Panic as follows:
(a) "Norma Howes was later an instrumental interviewing `therapist' in the first English case of alleged Satanic cult `ritual abuse' which occurred in 1988 in Kent." (Satanic Panic, page 243).
(b) "Howes supported her claims with so-called satanic cult ritual abuse diagnostic indicators and other American anti-Satanism pseudo-scientific propaganda materials supplied to her by Pamala Klein." (Id., page 243).
(c) "Howes claimed to have identified 18 cases of satanic ritual abuse in England between 1987 and 1990." (Id., page 243.)
(d) In the Defendants' book, Satanic Panic, Norma Howes was falsely accused of being a "moral crusader", along with Pamala Klein, in England in the late 1980s. Such false accusation, imputed to Norma Howes by association with Pamala Klein, damaged Norma Howes in her chosen profession and business.

B. Opinion vs. Fact

At the outset, defendants argue that the statements plaintiffs claim are defamatory are not actionable because they are statements of opinion, not of objective fact. Plaintiffs, in response, contend that the entire publication is presented as a statement of objective fact, as evidenced by defendants' use of "research data" and copious footnotes, and defendants' characterization of the work as an "investigation." Thus, the Court must, at the outset, apply the Milkovich test to determine whether a reasonable factfinder could conclude that the complained of statements imply assertions of objective fact.
It is clear from a reading of Satanic Panic that the book is intended to be an expose of claims of satanic ritual abuse. The subtitle, "The Creation of a Contemporary Legend," which appears on the cover, sets the tone of the book, and from the beginning pages of the book its thesis is clear: that Satanic ritual abuse does not in reality occur (or at least not in large scale), and that accusations of such abuse are largely unfounded, having been influenced by "contemporary legend", rumor, panic, and improper and suggestive investigative techniques.
The book devotes five pages to plaintiff Pamala Klein; that section is headed "The Career of a Moral Crusader." (Complaint Exh. A, p. 242-246). Klein is mentioned on three other pages, including one passage that she now claims is defamatory. Klein does not contend that the majority of the portions of the book devoted to her are defamatory, and does not take issue with the basic recounting of her career.[1] Notably, Klein does not claim defamation from statements that she "became the focus of outrage" in England, that "a legal judgment disputed her qualifications", that a Cook County Judge had ruled that she "is not a legitimate therapist as the term is defined by Illinois law," or that affidavits presented in that case revealed that she had "exaggerated or falsified some of the qualifications included on her *1333 professional vitae." Rather, she specifically claims defamation from the statements set out above.
Included in the section discussing Klein are the approximately twelve lines of the book that refer to plaintiff Norma Howes, which contain all the passages Howes claims are defamatory. The two paragraphs referring to Howes are set out here in full:
Pamala Klein made her first English contacts when she resided in England, between July 1985 and January 1986. While in England, she set up a business with an English social worker, Norma Howes, as a "consultant" for cases of child sexual abuse.
Norma Howes was later an instrumental interviewing "therapist" in the first English case of alleged Satanic cult "ritual abuse," which occurred in 1988 in Kent. Howes supported her claims with so-called Satanic cult ritual abuse diagnostic indicators and other American anti-Satanism pseudo-scientific propaganda materials supplied to her by Pamala Klein. Journalists found that these American "diagnostic indicators" had circulated widely among British child protection social workers. Howes claimed to have identified eighteen cases of Satanic "ritual abuse" in England between 1987 and 1990.
(Complaint Exh. A, p. 243). Howes does not claim as defamatory the statement that she and Klein set up business together; all the statements she claims are defamatory are contained in the second paragraph.
The book recounts various parties' reactions to accusations of ritual abuse, and, as plaintiffs' briefs correctly argue, clearly favors the accused abusers over the alleged victims of ritual abuse claims; it cannot be doubted that the book attempts to present a case that persons such as Klein improperly influenced children and others to make false accusations of ritual abuse. While the book may indeed be an "investigation", includes "research", "data" and copious footnotes, its basic tenor is not at all objective. The author presents it as a sociological study, and notes that "the present interpretation of the Satanic cult scare employs theories drawn from the sociology of collective behavior and the sociology of deviant behavior." The general tenor of the work is one of muck-racking or expose, and, although purportedly factual, it is clearly a propaganda piece. Looking at the work as a whole, its conclusions and thesis appear to be just the sort of "imaginative expression" and "rhetorical hyperbole" that the Supreme Court has repeatedly found to be protected speech.
This, however, does not end the analysis, because if the individual statements complained of purport to be statements of objective fact, and if their truth or falsity is capable of proof, then, under Milkovich, plaintiffs could still have an actionable case for defamation based on the individual statements, even though the book as a whole clearly shows that it is an opinionated work. Thus, the Court will examine each statement claimed to be defamatory.
Several of the allegedly defamatory statements do not contain any provable false connotations, and accordingly are not actionable as a matter of law. The largest group of these are the "moral crusader" allegations. As a preliminary matter, it is questionable whether either plaintiff has sufficiently plead the words or statements she finds objectionable. Klein complains of being called a "moral crusader", but then her complaint cites the Court to five pages of text. Howes merely complains that her association with Klein labels her as a moral crusader, and does not cite any pages that actually call her a moral crusader. Under the pleading standards of Missouri Church of Scientology, 543 S.W.2d 776 (Mo. en banc 1976), this is insufficient, as attaching and incorporating an entire text is not a substitute for specifically setting forth in the petition the particular words alleged to be libelous. Similarly, Howes claims the book accuses her of being a "moral crusader" and of "fomenting a `witch hunt' in England," but does not cite to any passage actually stating that. The Court will, however, liberally construe the complaint to assume that plaintiffs have met this pleading standard with respect to the specific allegations of the complaint which are set out above.
The book clearly refers to Klein as a "moral crusader," but the descriptions of *1334 "moral crusader" which she claims are defamatory (her allegations 4(a) and 4(b) quoted above) appear in a different section of the book from that discussing her career. Most of the of the language in these definitional sections is complimentary.[2] The paragraph from which plaintiff draws her complained of phrases can only be reasonably read to state that sometimes moral crusades can turn into witch hunts, and that crusaders are likely to assume that those accused are in fact guilty. Whether either plaintiff is in fact a "moral crusader," as that term is used in this book, cannot be objectively proven to be true or false, any more than the descriptions of the work habits and biases of "moral crusaders" can be proven. Accordingly, Klein's claims in paragraphs 4(a) and 4(b) and Howes' allegation 4 and 4(d) cannot form a basis for actionable defamation.
Similarly, plaintiff Howes claims to have been defamed by the following statement: "Howes supported her claims with so-called satanic cult ritual abuse diagnostic indicators and other American anti-Satanism pseudo-scientific propaganda materials supplied to her by Pamala Klein." Upon consideration of this statement, the Court believes that a reasonable factfinder could not find that this statement implies an assertion of objective fact. The phrases "so-called ... indicators" and "pseudo-scientific propaganda materials" are clearly statements of defendant Victor's opinions of the methods, and cannot be proven one way or another. What one social scientist considers to be pseudo-scientific another could consider legitimate, but, in the context used here, neither can be tested or proven. "Imaginative expression" and "rhetorical hyperbole" are not actionable as defamation. Nazeri at 314, citing Milkovich at 20, 110 S.Ct. at 2706. The Nazeri court noted that the more vituperative and abusive a statement is, the more likely it is to be protected as an expression of opinion. Howes' allegation 4(b) demonstrates this point, and the statement cannot form a basis for a defamation claim.
Klein's allegations 4(a) and 4(b) and Howes' allegations 4, 4(b) and 4(d) therefore challenge protected speech that cannot form the basis for a defamation claim.

C. Statements That Do Not Refer to Plaintiff

Plaintiff Klein argues that defendants falsely accused her of "fomenting unsubstantiated child abuse accusations" by appearing in certain training videos. Defendants argue that the words in question do not refer to plaintiff Klein.
In order for words to be actionable they must refer to the plaintiff and be understood by others as referring to the plaintiff. May v. Greater Kan. City Dental Soc'y, 863 S.W.2d 941, 944 (Mo.Ct.App.1993). If there is a question as to whether the words are "of and concerning" the plaintiff, this is a fact dispute for the jury. However, if the words are unambiguous as to whom they refer, the issue may be one of law. Id. at 945.
The entire passage containing the phrases Klein complains of reads as follows:
A series of front page articles in the San Diego Union brought more than 350 additional complaints from parents who had been accused of Satanism or had children taken away for questionable medical examinations. Further research revealed that as early as November 6, 1990, supervisors had noted a rising number of complaints from parents about unsubstantiated child abuse accusations and had called for an immediate review of the department. Much of the social worker's information had come from training videotapes, featuring Roberta Sachs and Pamala Klein and produced by Cavalcade Productions of Ukiah, CA.
*1335 Satanic Panic, p. 122. The word "fomented" does not appear in the text. Placed back into the context of the sentence from which plaintiff quotes it, the quoted material merely refers to a rise in complaints by parents in the San Diego area of accusations of ritual abuse. If the passage implies that anyone provoked unsubstantiated child abuse accusations, it implicates an apparently nameless social worker. Even if a reader were to draw the conclusion that the social worker mentioned in the passage is somehow responsible for the rise in unsubstantiated claims, the mere fact that he or she watched a training tape in which Klein appeared does not impute that Klein "fomented" unsubstantiated child abuse accusations. Klein does not claim that the statement that she appeared in the videos is false: her specific claim is that defendants stated that she "fomented" the unsubstantiated claims. The statement alleged in subparagraph (c) does not refer to Klein and is therefore not actionable by her.

D. Statements That Are Not Defamatory

For statements to be defamatory, they must be of a nature that injure the plaintiffs' reputation in the community. That is, they must be statements that imply evil or wrongdoing. "A writing claimed to be libelous must be given its ordinary meaning in the plain and popular sense." Buller, 684 S.W.2d at 478. Additionally, for a statement to libel a plaintiff professionally, as each plaintiff claims here, the words must directly tend to injure or prejudice plaintiff in her profession, trade, business, or employment by imputing a want of knowledge, skill, capacity or fitness to perform, and must impute fraud, want of integrity of misconduct. Buller, 684 S.W.2d at 477. "Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession." Swafford, at 215. Although Nazeri did away with the traditional per se and per quod distinction, plaintiffs here have alleged damage to their professions, and the standards from the older professional defamation cases still apply, because without the allegation of defamation in the profession, the majority of the words here could not even be arguably considered defamatory. It is only when placed in the context of plaintiffs' professions as child therapists and/or child abuse investigators that the words used here become even potentially defamatory.
Plaintiff Klein argues she was defamed in her profession by the statements that she "transformed a moral enterprise into a lucrative business enterprise" and "made a very profitable business out of the satanic cult scare." Additionally, she claims that the rhetorical question, "Are there many more moral crusaders, like Pamala Klein, profiting from the satanic cult scare?", is defamatory. Defendants argue that the statements, if disparaging at all, are only so in a general way, which is insufficient in a professional capacity case. When these three statements are read in context, they do not defame plaintiff in her profession as a matter of law. Assuming that the statements imply that plaintiff has a profit motive, the Court fails to see how these statements touch on plaintiff's qualifications or ability to perform her work as a child therapist/investigator. The plain sense of the words used is that plaintiff has made money in pursuing her profession, and this, in itself, is not defamatory.
Klein also claims to have been defamed by the statement that "... the program relied upon American `expert', Pamala Klein as a consultant for background information about Satanic cults and `ritual abuse.'" The "program" referred to was an English television show, and the sentence actually began: "Journalists found that the program relied upon ..." Assuming the falsity of this statement, and giving the words their common meaning and natural import, the Court does not see how this statement accuses plaintiff of lack of skill, knowledge, and professional conduct in the pursuit of her profession. The words are not defamatory on their face, nor has plaintiff pleaded extrinsic facts which indicate the defamatory nature of the words.
Plaintiff Klein alleges that defendants falsely stated that she was terminated *1336 by the Governing Board of the Hanover Township Mental Health Board in 1989. Even assuming that the statement is false and that plaintiff was not actually terminated, that statement does not necessarily impute a want of knowledge, skill, capacity or fitness to perform, nor does it impute fraud, want of integrity or misconduct. Defendants do not state any reason for the parting of the ways between plaintiff and the Hanover Mental Health Board, nor does the paragraph imply any cause. The mere statement that someone has been terminated from employment is not in and of itself defamatory. Davis v. Ross, 754 F.2d 80, 84 (2nd Cir.1985). The statement here is not libelous on its face, and plaintiff has failed to plead any facts to show why the statement would be construed as defamatory.
Plaintiff Norma Howes alleges that she has been defamed by the statements: "Norma Howes was later an instrumental interviewing `therapist' in the first English case of alleged Satanic cult `ritual abuse' which occurred in 1988 in Kent" and "Howes claimed to have identified 18 cases of satanic ritual abuse in England between 1987 and 1990." The Court does not see how these statements, given their ordinary meaning and read in the context of the defendants' publication, charge Howes with fomenting a "witch hunt", as Howes alleges. These allegations, as pleaded, are not sufficient to support a claim for which relief could be granted.
Thus, paragraphs (d), (f), (g), (h), and (i) of Klein's allegations and (a) and (c) of Howes' allegations cannot form the basis for an action in defamation.

E. Judicial Proceedings

Plaintiff Klein claims to have been libelled by defendant's statement that "... Klein used questionable methods of interviewing, asked leading questions, and drew conclusions not based upon facts." Defendants argue that this statement is privileged because it merely reports judicial proceedings in a child abuse case which took place in Illinois.
Reports of judicial proceedings and the statements made therein are subject to a qualified privilege. See Hoeflicker v. Higginsville Advance, Inc., 818 S.W.2d 650 (Mo.Ct.App.1991); Erickson v. Pulitzer Pub. Co., 797 S.W.2d 853, 857 (Mo.Ct.App.1990). The privilege can be overcome, however, if the matters published were not a fair and accurate report or abridgement of the proceedings.
The book's full statement reads as follows: "The affidavits stated further, that Klein used questionable methods of interviewing, asked leading questions, and drew conclusions not based upon facts." Plaintiff does not argue that the affidavits did not state this, but argues that defendants are not entitled to any privilege because they, by the use of other language not alleged to be defamatory, indicated their approval or agreement with the affidavits, and implied that the statements in the affidavits were true. Plaintiff also argues that defendants should have known that the affidavits were unreliable and therefore are not entitled to the privilege.
The statement complained of is simply a factual report of judicial proceedings, and the fact that defendants cited the proceedings as support for their thesis does not strip them of their privileged status. Whether the affiant was reliable is not an issue, so long as the report of the judicial proceedings is accurate, which plaintiff here admits. Therefore, Klein's paragraph 4(e) cannot form the basis for a defamation claim.

F. Actionable Statement

The Court concludes that Klein's claim survives the motion to dismiss because of one statement which she alleges to be defamatory. In describing a series of training seminars at which Klein lectured in England, the book states: "It was at these conferences that Klein made the infamous allegations about babies in the United States being cooked by Satanists in microwave ovens." Assuming that plaintiff is claiming the statement is false because she did not allege that babies were cooked in microwave ovens, this statement may be actionable, and plaintiff should have an opportunity to prove that it is false and the other elements required to prove her claim under Missouri *1337 law. This is the only claim of defamation that survives.

G. Actual Malice

The parties' briefs spend much time discussing whether plaintiff has properly pleaded actual malice under the applicable standards. Although the Court agrees that plaintiffs' complaint is extremely poorly pleaded and confusing, when it is read liberally it appears she has properly pleaded the standard required under MAI 23.06(2), which is also the New York Times v. Sullivan standard. Therefore, Klein's claim that the "microwaving babies" statement is defamatory survives the motion to dismiss, as does her claim for punitive damages based on that statement.

II. False Light Invasion of Privacy (Counts V and XII)

As an alternative theory, plaintiffs Klein and Howes, in Counts V and XII, respectively, claim that defendants invaded their privacy by placing them before the public in a false light. Defendants urge that these counts be dismissed as this tort is not recognized in Missouri.
The Missouri Supreme Court has recognized invasion of privacy as a tort generally and has acknowledged the classifications of that tort as set out in the Restatement (Second) of Torts. See Sofka v. Thal, 662 S.W.2d 502 (Mo.1983). Section 652A of the Restatement (Second) sets forth the general principles of what constitutes an invasion of privacy as including: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; or (4) publicity that unreasonably places the other in a false light before the public. Section 652E of the Restatement sets forth the criteria for the "false light" tort as:
One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.
No Missouri court, however, has recognized the "false light" tort as an action separate from defamation. See Sullivan v. Pulitzer Broadcasting Company, 709 S.W.2d 475, 478 (Mo.1986). The court in Sullivan could not find a sufficient difference between defamation and "false light" to justify recognition of the latter in that case. After Sullivan, Missouri courts have repeatedly rejected "false light" claims. "The tort of invasion of privacy is not a species of defamation. Where the claim for recovery on either theory ... involves untrue statements, the appropriate remedy is by defamation." Hester v. Barnett, 723 S.W.2d 544, 563 (Mo.Ct.App. 1987). See also Henry v. Taft Television & Radio Co., 774 S.W.2d 889, 892 (Mo.Ct.App. 1989); Nazeri, 860 S.W.2d at 317; accord Hardge-Harris v. Pleban, 741 F.Supp. 764, 776 (E.D.Mo.1990).
Plaintiffs note, however, that the Sullivan court acknowledged that Missouri courts, given the appropriate facts, could someday be justified in recognizing the "false light" tort. Plaintiffs cite the court to two Illinois cases, Cantrell v. American Broadcasting Cos., 529 F.Supp. 746 (N.D.Ill.1981), and Lovgren v. Citizens First Nat'l Bank, 126 Ill.2d 411, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989), to support their claim that they have pleaded facts sufficient for the Missouri courts to recognize the "false light" tort. Plaintiffs' theory appears to be that if the objectionable statements are false, then a claim for defamation lies, but if the jury should find the objectionable statements to be true, then the alternative claim is that of a false light invasion of privacy, in that the statements, while true, create an overall false impression of the plaintiffs.
While plaintiffs do cite one case that held that one can recover for false light even if the statements made are true, myriad cases and the Restatement itself require false statements. As the Supreme Court of Texas noted in Cain v. Hearst Corp., 878 S.W.2d 577, 580 (Tex.1994): "[M]ost jurisdictions .. that have recognized the action, require that *1338 a statement be false if it is to be cognizable under the false light doctrine." Accord Tomson v. Stephan, 696 F.Supp. 1407, 1411 (D.Kan.1988); Clarke v. Denton Pub. Co., 793 S.W.2d 329 (Tex.App.1990); Bisbee v. John C. Conover Agency, Inc., 186 N.J.Super. 335, 452 A.2d 689, 692 (1982).
Moreover, the undersigned simply cannot conceive how the objectionable statements in this case, if found to be true, could at the same time place the plaintiffs in a false light. For example, in paragraph 6 of Count V, plaintiff Klein sets out how she has allegedly been falsely characterized by listing the same ten statements that she claims are defamatory. But if the plaintiff, for the purposes of this Count, is alleging that the statements made are true, then apparently she is contending that it is a true statement that, for example, she is a moral crusader who used questionable methods of interviewing, asked leading questions, and drew conclusions not based upon facts. Plaintiff has not explained how she could have been placed in a false light by having those "truths" exposed to the public.
This case does not present a situation where true facts are presented in such a fashion as to create a false impression or false light. Here, the very false light plaintiffs complain of is clearly contained in the disputed statements. For plaintiff to be portrayed in a false light, it would be necessary that the disputed statements be false. If these statements are false, then these claims are no more than defamation claims, and Missouri courts would treat them as such, as Sullivan clearly held. Therefore, Counts V and XII fail to state a claim on which relief may be granted, and will be dismissed.
Accordingly,
IT IS HEREBY ORDERED that the motions of defendants to dismiss [# 13, # 14] are granted in part and denied in part.
A separate Order of Dismissal is entered this date, as is a separate Case Management Order setting out the schedule for the remainder of this case.

ORDER OF DISMISSAL
In accordance with the Memorandum and Order entered this date,
IT IS HEREBY ORDERED that all claims of plaintiff Norma Howes are dismissed, with prejudice, for failure to state a claim upon which relief may be granted.
IT IS FURTHER ORDERED that Counts V through VII of plaintiff Pamala Klein's claims, are dismissed, with prejudice, for failure to state a claim upon which relief may be granted.
IT IS FURTHER ORDERED that paragraphs 4(a), (b), (c), (d), (e), (f), (g), (h), and (i) are stricken from plaintiff Klein's Counts I and II, and her claims based on those statements are dismissed, with prejudice, for failure to state a claim upon which relief may be granted.
NOTES
[1] Actually, Klein vaguely alleges "other passages" defame her as well, but the Court will not consider Klein's complaint to encompass any statements not specifically alleged to be defamatory, as obviously this cannot, as a matter of law, suffice under the pleading standards of Missouri Church of Scientology, 543 S.W.2d 776 (Mo. en banc 1976). Instead, the Court will consider only whether the specific words alleged in the complaint and set out in full above are actionable.
[2] The author notes that the term is not to be used in the pejorative sense (p. 207), and defines the term as "people who play the role of activists in a social movement aimed at fighting a social `evil' which they perceive to exist in society." The author states that moral crusaders have included abolitionists, prohibitionists, feminists, environmental activists, abortion activists, and activists against drunk driving (p. 208). Further, the author states that the motivations of "moral crusaders" flow from "humanitarian desires to help people who are afflicted by the unrecognized evil." (p. 208).